MOBLEY, superintendent of banks, *v.* MURRAY COUNTY.

No. 9812. FEBRUARY 14, 1934.

*C. N. Davie* and *J. F. Kemp,* for plaintiff in error.

*Howell, Heyman & Bolding* and *C. N. King,* contra.

RUSSELL, C. J. The ultimate issue before the court in this case is whether the judgment of the superior court was correct in ruling on the demurrer to a cross-action filed by the State superintendent of banks, in charge of the affairs of the Georgia State Bank, who asked for a judgment against Murray County, the cross-action having been filed as an amendment to the answer of the superintendent of banks to a petition filed by Murray County seeking a judgment for $18,000 against the bank. The incidents anterior to this litigation are not unfamiliar to this court, they having been passed on thrice. *Bank of Chatsworth* v. *Hagedorn Construction Co.,* 156 *Ga.* 348 (119 S. E. 28), 162 *Ga.* 488 (134 S. E. 310) ; *Hagedorn Construction Co.* v. *Mobley,* 168 *Ga.* 385 (147 S. E. 890). The case sub judice arose out of the fact that Murray County issued $100,000 worth of bonds in 1919 for the purpose of building and repairing roads. The proceeds of these bonds, together with other items aggregating about $36,000, were deposited in the Bank of Chatsworth, which became acting treasurer as to this road fund. Under the ruling in 162 *Ga.* 488, it was the duty of the Bank of Chatsworth to keep the road fund of Murray County, and to receive and pay out the money of the county only upon proper vouchers and warrants, approved by the board of commissioners of Murray County, and issued only for the purpose for which the funds could be legally used. At the completion of a certain road project by Hagedorn Construction Company the board of county commissioners issued a warrant on the Bank of Chatsworth, dated March 21, 1922, payable to the construction company, for $17,725, drawn against the road fund supposedly on deposit with the Bank of Chatsworth. It was promptly presented to the bank, which denied that it had road funds of Murray County with which to pay it, and claimed that the amount on deposit by Murray County with the Bank of Chatsworth was only $89.35. Thereupon Hagedorn Construction Company filed a petition for mandamus to the August term, 1922, of Murray superior court, to compel the Bank of Chatsworth to pay this warrant, alleging that the bank should have sufficient funds on hand to pay it. The bank demurred upon the ground that the county was an

ordinary depositor, and the bank was not chargeable with the handling of the funds as a county treasurer, nor under any obligation to see that the funds in its hands were paid out only for the purposes legally authorized. On the overruling of its demurrer the bank brought its bill of exceptions to this court; and on August 10, 1923, we held that the bank was subject to mandamus. 156 *Ga.* 348.

The hearing upon the mandamus proceedings in Murray superior court resulted in a mandamus absolute, ordering the Bank of Chatsworth to pay the warrant, adjudging that the bank failed to show any authority for more than $11,000 it claimed to have paid out for Murray County, and that more than the balance of the warrant had been illegally paid by the Bank of Chatsworth in the event Hagedorn Construction Company could not recover against the Georgia State Bank. In the meantime, and while the original suit for mandamus was pending, the Bank of Chatsworth was merged into the Georgia State Bank, and in the merger all of the assets of the Bank of Chatsworth were transferred to the Georgia State Bank, which became subject to all existing liabilities of the Bank of Chatsworth. The decision in *Bank of Chatsworth* v. *Hagedorn Construction Co.*, 162 *Ga.*, supra, was rendered July 13, 1926, and the Georgia State Bank closed on July 14, 1926. Claims were presented to A. B. Mobley, superintendent of banks, both by the Hagedorn Construction Company and Murray County, and were denied by him. Both Hagedorn Construction Company and Murray County then brought separate suits, in Fulton superior court, against the superintendent of banks. The case of Hagedorn Construction Company was heard by the judge upon an agreed statement of facts, without the intervention of a jury, and was decided by him in favor of the construction company on December 19, 1928, and his decision was affirmed by this court on April 11, 1929. 168 *Ga.* 385. This court in that decision definitely fixed the liability of the superintendent of banks, in charge of the affairs of the Georgia State Bank, to pay, as a prior claim on the funds of this bank, the demand of Hagedorn Construction Company for $17,725 principal and over $8,000 interest. This judgment was paid and satisfied. The suit brought by Murray County was held in abeyance from August 16, 1927, until August 7, 1929, when the superintendent of banks filed a cross-action in which he asked for a judgment against Murray

County for $10,671.19, which he alleged was due to the Georgia State Bank and to himself as its representative, on account of the fact that the Bank of Chatsworth had overpaid the amount of the funds in its hands belonging to the road fund of Murray County. Murray County filed a demurrer and a motion to strike this cross-action, on the grounds that the cross-action, being for money had and received, was barred by the statute of limitations, the amounts claimed having been paid out more than four years preceding the filing of the cross-action; that the venue of a suit against Murray County is in the courts of Murray County, and the superior court of Fulton County has no jurisdiction, and the cross-action is not in the nature of a set-off or recoupment as to any claim by the defendant against Murray County; that, the petition brought by Murray County being supplemental to the suit brought by Hagedorn Construction Company, the right of Murray County to proceed against the defendant was terminated when the proceedings instituted by Hagedorn Construction Company were disposed of favorably to the construction company; that said cross-action does not set forth any statutory authority for defendants to sue Murray County, that it does not appear that any claim in behalf of the Bank of Chatsworth, the predecessor in title of the defendant, was presented to petitioner within twelve months after said alleged claims accrued, and more than twelve months having elapsed since the accrual of said claims, they are barred under the provisions of § 411 of the Code of Georgia. The judge, without expressly ruling on other grounds, sustained the ground that the action was barred by the statute of limitations, and dismissed the cross-action. The exception is that the court erred in not overruling the motion to strike, and in not submitting the case to trial on its merits.

We are of the opinion that the only question before the court at this time is whether the cause of action asserted by the superintendent of banks did not arise until it had been determined by the decision under which the superintendent was required to pay the decree in favor of the Hagedorn Construction Company, or whether there was a right of action in the bank from the time that Murray County refused to pay the demand of Hagedorn Construction Company which was later enforced by mandamus. In other words, did the right of action embodied in the cross-action become barred, if at all, within four years from the time the Chatsworth Bank

breached its contract to pay any funds in its hands as the road-fund account only to charges for the construction and improvement of the roads of Murray County, and then only upon proper authorization by the county commissioners having in charge the road funds of the county deposited with the Bank of Chatsworth? We have referred only to the Bank of Chatsworth, because it follows as a matter of course that the Georgia State Bank, by merging with the Bank of Chatsworth, thereby obtained all the assets and assumed all the liabilities to which the Bank of Chatsworth was liable. The items spent by the Bank of Chatsworth, as alleged by the superintendent of banks, represented funds withdrawn from the bank by the county commissioners and expended by them for and on behalf of the county for purposes other than the construction of roads. Learned counsel for the plaintiff in error say that it is clear that the Georgia State Bank has a cause of action against Murray County, and that it is not barred by the statute of limitations. It is admitted to be true "that the commissioners of roads and revenues of Murray County withdrew from the Bank of Chatsworth, subsequently merged with the Georgia State Bank, the funds in question more than four years before the cross-action was filed; yet the cross-action was filed within less than a year after the Georgia State Bank had the right to sue Murray County or had been damaged by the county." It is argued: "Until the Georgia State Bank had been forced to pay the warrant issued to Hagedorn Construction Company it had no right to sue. It had not been damaged. It had no right to complain. After it had paid the county's obligation, evidenced by the warrant issued to Hagedorn Construction Company, the county became indebted to it." To sustain the contention that the right of the superintendent of banks, as representative of the Georgia State Bank, to sue Murray County did not arise until the bank was damaged or had been injured as pointed out above, counsel cites 37 C. J. 807, § 152, and quotes 37 C. J. 810, § 153, that "The true test, therefore, to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result." The case of Broadwell v. Board of Commissioners, 88 Okla. 147 (211 Pac. 1040), also is cited. In support of the proposition that the Georgia State Bank, after its merger, could not have brought the action set forth in the cross-action until it had been adjudged and de-

termined that Murray County was actually indebted to the Georgia State Bank as the assignee of the Bank of Chatsworth, counsel cites *Butts County* v. *Jackson Banking Co.,* 129 *Ga.* 801 (3, 4) (60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. R. 244), and says: "It would seem that 'common honesty' would require Murray County to repay this money. Just because the commissioners of roads and revenues withdrew money from the road-bond account and spent it for other purposes does not keep the county from being morally and legally obligated to repay it." The principle of common honesty is beside the mark in determining whether the action, whatever be its nature, is subject to the bar of the statute of limitations.

Nor is the fact that the plaintiff in error asserted, by amendment, his cross-action within one year from the alleged inception of the cause of action (*Dement* v. *DeKalb County,* 97 *Ga.* 733, 25 S. E. 382; *Elbert County* v. *Brown,* 16 *Ga. App.* 834 (3), 86 S. E. 651), pertinent in this case. In any event the Bank of Chatsworth, the predecessor of the plaintiff in error, had notice on March 22, 1922, of the proceedings concerning the subject-matter to which we have referred, and in which all of the parties, including the plaintiff in error, were interested. The drawing of the warrant for $17,725 by the commissioners of Murray County on the Bank of Chatsworth, in favor of the Hagedorn Construction Company, and the institution of the original mandamus proceedings by the payee of the warrant against the Bank of Chatsworth to enforce payment thereof, informed the bank of whatever rights it possessed growing out of the illegal payments which had theretofore been made by the bank out of the road funds in its hands belonging to Murray County. Considering the argument in opposition to the demurrer interposed by Murray County, it clearly appears that the superintendent of banks postponed filing his cross-action merely because he was of the opinion that his right of action would not accrue until he had actually been damaged or suffered loss. As to this, we concur in the ruling of the trial judge, who held that the right of action began at the time that the implied contract of the Bank of Chatsworth to pay funds deposited with it for the purpose of road contracts and road work should not be applied to any other purpose than that of work in the construction or repair of the roads of Murray County was breached. It appears that the Bank of Chatsworth

claimed it had only $89.35 of the fund belonging to the county at the time of the merger with the Georgia State Bank on November 22, 1922. It therefore appears from the cross-action that the payments sued for were made prior to November 22, 1922. As appears from the record in *Bank of Chatsworth* v. *Hagedorn Construction Co., 162 Ga.* 488, the judgment of the superior court was rendered in July, 1925, and that judgment was affirmed by the Supreme Court on July 13, 1926. Thus it was adjudicated and determined in that case that in the spring of 1922 the Bank of Chatsworth had illegally paid out funds of Murray County, and a right to sue would have arisen for recovery of nominal damages, at least, for the breach of the bank's implied contract to pay out the road funds of Murray County only as authorized by law. The contract by which the Bank of Chatsworth was merged with the Georgia State Bank, and the Georgia State Bank took over all the assets of the Bank of Chatsworth and assumed all its liabilities, was executed on November 22, 1922. On July 14, 1926, the Georgia State Bank and its branch at Chatsworth were taken over by the superintendent of banks. Both Hagedorn Construction Company and Murray County filed claims with the superintendent of banks. The claims of both were denied, and both promptly brought suit upon their demands. As appears in the 156, 162, and 168 *Ga.*, supra, the Hagedorn Construction Company pressed its case to its ultimate conclusion, but the case of Murray County against the superintendent of banks rested in innocuous desuetude until the defendant, by cross-action, sought to recover a judgment against Murray County.

The motion to dismiss the cross-action raises the point whether the right of action arose at the time that a party had a right to sue for a breach of duty, although his damage or the injury done may be so small as to be merely nominal in character, and before the exact quantum of the injury could be determined. Not only has this question been settled in accordance with the judgment of the trial court by the great weight of authority in other jurisdictions, but there are numerous decisions of this court which sustain the proposition that a right of action has its inception from the time when there has been a breach of duty which would entitle the injured party to file a suit, without regard to whether any actual damage has in fact resulted. As applied to this case, this means

that Murray County had a right of action against its quasi-treasurer, the Bank of Chatsworth, for its breach of duty for improperly and illegally paying warrants drawn by the county commissioners in settlement of claims other than those the use of which had been restricted to road work. The right of action arose when these unlawful payments were made, before November 22, 1922. The right of Murray County to maintain an action would therefore expire prior to November 22, 1926. The cross-action was not filed until August 7, 1929. The ruling in *Dement* v. *DeKalb County,* supra, gives the bank no relief in this case, because no suit was filed for recovery of these funds until seven years or more had elapsed from the time that the money claimed was illegally paid out for the benefit of the county. The cross-action was not filed until August 7, 1929. At that time the Georgia State Bank (successor to the Bank of Chatsworth) had already paid this money on the Hagedorn Construction Company warrant. They had claimed, when the warrant was presented in March, 1922, that the county had on hand only $89.35. The Civil Code (1910), § 5673, declares: "The statute of limitations applies to the subject-matter of set-offs, as well as the plaintiff's demand." In *Brown* v. *Winship,* 20 *Ga.* 693, 696, it was said: "The account pleaded as a set-off was due on the 9th of May, 1851. Taken by itself, the account was barred when it was pleaded, and that is the point to which the time must be computed in determining on the bar, when the set-off is not pleaded at the answering term of the court." See also *Lee* v. *Lee,* 31 *Ga.* 26 (76 Am. D. 681); *Crawford* v. *Gaulden,* 33 *Ga.* 173. In *McIntosh* v. *Thomasville Real Estate &c. Co.,* 141 *Ga.* 105 (80 S. E. 629), there was an effort, by amendment of an answer, to recover an excess as usury; and the court ruled: "The amendment to that plea, by adding one of set-off to recover the excess paid as usury, did not relate to the filing of the plea, so as to escape the bar of the statute of limitations." Consequently it was held that as the amendment to the plea, to recover the excess paid as usury, was not filed within one year from the date that the money was paid, there could be no recovery. See also *Northington* v. *Granade,* 118 *Ga.* 584 (45 S. E. 447). In a note to Huggins *v.* Smith, 141 Ark. 87 (216 S. E. 1), in 16 A. L. R. 328, 338, it is clearly established that the statute of limitations must be computed from the time when the amendment in the nature of a cross-action is filed; and the following Georgia

cases are referred to: *Brown* v. *Winship*, 20 *Ga.* 693; *Lee* v. *Lee*, 31 *Ga.* 26; *Finney* v. *Brumby*, 64 *Ga.* 510; *Saulsbury* v. *Iverson*, 73 *Ga.* 733; *Brewer* v. *Grogan*, 116 *Ga.* 60 (42 S. E. 525). Since "the accrual of the cause of action means the right to institute and maintain a suit," the cause of action in this case had accrued when the money was irregularly paid out by the Bank of Chatsworth for the benefit of the county. "The statute of limitations begins to run from the time when a complete cause of action accrues." 37 C. J. 807, 810, §§ 152, 153. "The fact that the decision in a pending lawsuit may largely affect a claimant's rights does not cause his right of action to accrue only upon the termination of such suit. His cause of action accrues independently of it, except when the pending suit is practically conclusive as to the nature and extent of his rights, or where his success therein is a prerequisite to his right to maintain the new action. . . Under the rule that an action for a breach of contract may be begun before substantial damage has been sustained, a right of action accrues and the statute begins to run at the time the contract is broken, not at the time when actual damage results or is ascertained." 37 C. J. 812, 815, §§ 155, 162. So we hold that the cause of action here arose at the time that the 'money was illegally paid out for the purpose of benefiting the county other than for the construction and maintenance of its roads, and not when it was finally determined that the bank had to make payment to the Hagedorn Construction Company's warrant.

In the *Broadwell* case, supra, lands of certain of the Indians had been taxed by the State of Oklahoma, and these taxes were paid under compulsion in 1909, 1910, and 1911, and prior to January 1, 1912. The plaintiffs secured assignments of the claims of certain Indians. The Supreme Court of Oklahoma ruled that these taxes were valid. In one of the cases in question (Choate *v.* Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. ed. 941), the Supreme Court of the United States held that the taxes were invalid. In the Broadwell case the Supreme Court of Oklahoma said: "Plaintiff could have maintained his action the day the money was paid to the county in each instance. The cause of action accrued on that date. He could have successfully maintained his cause of action on that date, as his claims presented a Federal question, and, if the facts warranted, although the State courts denied him relief, he could have carried the action to the Supreme Court of the United States and been suc-

cessful. We know of no rule, and no authority is cited to support the rule, that the statute of limitations does not run against a claim until a court of final resort has adjudged a similar action could be successfully maintained." An early decision of the Supreme Court of the United States, Wilcox *v.* Plummer, 4 Peters, 172 (7 L. ed. 821), is perhaps of special interest to lawyers, because the ruling determined when the statute of limitations commences running on account of an error made by an attorney in the handling for a client of a promissory note turned over to the attorney for collection. Due to the attorney's negligence the plaintiff failed to recover. After the final determination of the case suit was brought against the attorney, and the statute of limitations was pleaded. The court said: "The questions in the case were whether the statute of limitations commenced running when the error was committed in the commencement of the action against the endorser? or whether it commenced from the time the actual damage was sustained by the plaintiffs by the judgment of nonsuit? whether the statute runs from the time the action accrued? or from the time that the damage was developed, or became definite? *Held,* that the statute began to run from the time of committing the error, by the misnomer in the action against the endorser. The ground of action here is a contract to act diligently and skillfully, and both the contract and breach of it admit of a definite assignment of date. When might this action have been brought? is the question; for from that time the statute must run. When the attorney was chargeable with negligence or unskillfulness, his contract was violated; and the action might have been sustained immediately; perhaps, in that event, no more than nominal damages may be proved, and no more recovered; but, on the other hand, it is perfectly clear that the proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict; if so, it is clear that the damage is not the cause of the action." The Wilcox case has been cited approvingly in Cummings Construction Co. *v.* Marbleloid Co., 51 Fed. (2d) 908 (8), and in Sills Inc. *v.* Bridgeton Condensed Milk Co., 43 Fed. (2d) 73.

That "The statute of limitations begins to run from the time a right of action accrues for a breach of duty or contract or for a wrong, without regard to the time when actual damage results," was decided in Aachen & Munich Fire Insurance Co. *v.* Morton, 156

Fed. 654, Painter Fertilizer Company *v.* Kil-Tone Co., 105 N. J. L. 109 (143 Atl. 332), Gogolin *v.* Williams, 91 N. J. L. 266 (102 Atl. 667), and numerous other cases. Without regard to these foreign adjudications, the same doctrine has frequently been held by this court. As said in *Crawford* v. *Gaulden,* 33 *Ga.* 173, 189: "The doctrine is well settled, that in an action against an agent for negligence or unskillfulness, the statute of limitations commences to run from the time the negligent or unskillful act was committed, and plaintiff's ignorance of the negligence or unskillfulness can not affect the bar of the statute. 3 Barn. & Ald. 288; do 626; 3 Barn. & Cress. 149; 5 Barn. & Cress. 259; 2 Carr. & Payne, 238; 3 John R., 523 (side); 20 John. 33; 5 Wendell, 30; Cheeves, 22; 2 Strob. (L.) 344." In the *Gaulden* case, as in the case at bar, there were circumstances to put the plaintiff on notice of the breach of a duty and a contract, and as to this it was said: "Could he (if ignorance were a sufficient reply to the statute) claim to have been ignorant after that day? In a view of the case most favorable to him, were not the allegations in this bill, verified by the complainant, enough to put him upon inquiry? Would the utmost stretch of liberality to him allow the statute to slumber after this information reached him? yet he slumbered after this more than eight years—more than twice the statutory limitation." In the case at bar the plaintiff in error seems to have slumbered about seven years, or three years after the statute of limitations had attached. See also *Lilly* v. *Boyd,* 72 *Ga.* 83, in which the court cited approvingly a decision in Pennsylvania which held "that the statute of limitations begins to run in favor of an attorney from the time he collects or receives money for his client, although the client may not know it, but find it out afterwards." In *Raleigh & Gaston Railroad Co.* v. *Western & Atlantic Railroad Co.,* 6 *Ga. App.* 616 (65 S. E. 586), in which the writer had the honor of delivering the opinion of the Court of Appeals, it was held that "the right of action in the Raleigh & Gaston against the Western & Atlantic accrued immediately upon the injury to the car, and it was imperative to assert this right before it was barred by the statute of limitations. It was not necessary for the Raleigh & Gaston to wait until the Pullman Company had recovered a judgment against it. Its right of action was complete at that time, and it could have recovered a judgment against the Western & Atlantic before any claim of any kind was asserted by the

Pullman Company under the contract. That the right of action in the Raleigh & Gaston was complete immediately after the injury is clearly established by the cases of *Baker* v. *Boozer,* 58 *Ga.* 195, and *Gould* v. *Palmer,* 96 *Ga.* 798 (22 S. E. 583)." The same principle has been followed by the Court of Appeals in *Whittle* v. *Harp,* 40 *Ga. App.* 132 (148 S. E. 922), and *Felton* v. *Macon County,* 43 *Ga. App.* 651, 655 (159 S. E. 730). The latter case involved the limitation of twelve months within which to file a claim against a county.

So the judge correctly held that the cause of action in favor of the Bank of Chatsworth against Murray County, of necessity, accrued when the money was illegally paid out and spent by the county for other purposes beneficial to the county, but not restricted, as these payments should have been, to payment for road work. The litigation pending at the time that the Georgia State Bank took over the Bank of Chatsworth put the Bank of Chatsworth and the Georgia State Bank on express notice that it was claimed that a large amount of money paid out by the Bank of Chatsworth had been illegally paid out, and that under the law there was a right of action to recover it. Under principles of law well established in this State, and particularly in view of the ruling in *Crawford* v. *Gaulden,* supra, the Georgia State Bank was advised that it could not wait until the termination of the case and then make a successful claim against Murray County. Since the court struck and dismissed the cross-action upon the single ground that the action was barred by the statute of limitations, no reference need be made to other grounds of the motion to strike.

*Judgment affirmed. All the Justices concur.*