Linda K. SLADE, et al., Plaintiffs,

v.

CHRYSLER CORPORATION, Defendant.

No. 6:94–CV–0097 (WLS).

United States District Court,
M.D. Georgia,
Thomasville Division.

March 17, 1998.

Ralph Felward Simpson, Mr., Tifton, GA, Ben Kirbo, Mr., Bainbridge, GA, for plaintiffs.

Gary William Diamond, Mr., Royston, GA, Brian M. Weiss, Mr., Mark W. Wortham, Mr., Atlanta, GA, for defendant.

### ORDER

SANDS, District Judge.

On February 10, 1987, Plaintiff Linda K. Slade purchased a new Dodge Omni car from Defendant Chrysler's dealer in Bainbridge, Georgia. Throughout the following year, Plaintiff experienced numerous problems with the car's engine stalling. Plaintiff returned the car to the dealer's service department, yet mechanics evidently failed to adequately repair the car's engine. In July, 1988, Plaintiff and her family were involved in a serious highway accident, allegedly caused by the car's engine stalling. On December 22, 1994, Plaintiff filed a complaint in this Court for damages arising from alleged fraud by Defendant for selling her a car equipped with a defective engine. Plaintiff alleged, and continues to maintain, that Defendant knew about the engine's defect at the time she purchased the car, and breached its duty to disclose its defect to her. Presently before the Court are the parties' cross-motions for summary judgment on the issue of whether Plaintiff's action is barred by the statute of limitations. The Court now holds that it is.

### I. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. *Celotex Corp. v.. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." *Fitzpatrick,* 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the non-moving party. *Fitzpatrick,* 2 F.3d at 1116. If, on the other hand, the moving

party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. *Id.* Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

## II. Applicable Statute of Limitations

Under Georgia law, an action for fraud must be brought within four years after the claim accrues. O.C.G.A. § 9–3–31. *Limoli v. First Georgia Bank,* 147 Ga.App. 755, 756–57, 250 S.E.2d 155, 156–57 (1978), *reh'g denied* Oct. 30, 1978. The cause of action accrues when a plaintiff could first institute and maintain her action to a successful result. *Mobley v. Murray County,* 178 Ga. 388, 396, 173 S.E. 680 (1934). The time within which a plaintiff must bring her action may be tolled by virtue of fraud by the defendant: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitations shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9–3–96.

Both parties agree that the decision by the Supreme Court of Georgia in *Shipman v. Horizon Corp.,* 245 Ga. 808, 267 S.E.2d 244 (1980), provides the authority for determining whether the fraud alleged in this action tolls the statute of limitations:

> Actual fraud which tolls the statute arises in two entirely different circumstances....
>
> The first circumstance is where the actual fraud is the gravamen of the action. In such cases the statute of limitations is tolled until the fraud is discovered *or by reasonable diligence should have been discovered.* No other independent fraudulent act is required to toll the statute. Silence is treated as a continuation of the original actual fraud, 20 EGL 185, Lim. of Actions, § 22. Failure to exercise reasonable diligence to discover fraud may be excused

where a relationship of trust and confidence exists between the parties.

245 Ga. at 808–809, 267 S.E.2d 244 (emphasis added). In general, the defendant carries the burden of proving that the statute of limitations bars an action. However, the plaintiff carries the burden of proving that the limitations period should be tolled:

> The fraud established to toll the statute of limitations must be of a character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from [her] action. *The plaintiff has the burden of establishing fraud involving moral turpitude.* In the absence of a fiduciary relation, *even fraud will not prevent a suit from being barred, where the plaintiff has failed to exercise reasonable diligence to detect such fraud.*

*Bates v. Metropolitan Transit System, Inc.,* 128 Ga.App. 720, 721, 197 S.E.2d 781 (1973) (citations omitted) (emphasis added). In *Bates,* the Court of Appeals clearly explained that "if [the plaintiff] was misled by the adjustor, [the plaintiff] has not illustrated reasonable diligence to detect such deception," necessary to justify tolling the statute of limitations to encompass the date on which he ultimately filed his complaint. *Id.* at 722, 197 S.E.2d 781. In a similar context, the Court of Appeals for the Eleventh Circuit has explained: "As a general rule, a plaintiff relying on the doctrine of fraudulent concealment must show affirmative actions by the defendant constituting concealment. [She] must also show that [she] exercised reasonable diligence to discover [her] cause of action within the limitations period." *Hill v. Texaco, Inc.,* 825 F.2d 333, 335 (11th Cir. 1987) (citations omitted).

## III. Facts

Resolving all reasonable doubts in favor of the Plaintiff and drawing all justifiable inferences in her favor, there is no genuine controversy concerning any of the following material facts:

1. "On February 10, 1987, Plaintiff Linda Slade ("Plaintiff") purchased a new 1987 Dodge Omni automobile." *Def.'s Statement of Uncontested Facts* ¶ 1.

2. Plaintiff did not experience any problems related to the engine's stalling when she test drove the car and claims

that "these problems occurred only sporadically." *Aff. Linda Slade* ¶¶ 3, 4.

3. About "a week or two" after she purchased the car, and after she had driven it "about fifty or sixty miles," she experienced the car's engine stalling. *Dep. Linda Slade* at 61.

4. Nonetheless, Plaintiff experienced "repeated operational problems with [the car's engine] cutting off." *Aff. Linda Slade* ¶ 7.

5. When she experienced "these problems," Plaintiff returned the car to the Chrysler dealer where she purchased it. *Aff. Linda Slade* ¶ 9.

6. Plaintiff returned the car to the dealer's service department "at least ten or fifteen times." *Dep. Linda Slade* at 63, 77. Plaintiff's husband testified that he experienced the car's engine stalling "twenty-five, thirty times at least." *Dep. Charles Slade* at 15–16.

7. The car's engine regularly stalled. As Plaintiff testified: "[W]e learned to know when it was likely to [cut off] if we turned it too sharp or, you know, something like that. But it would cut off when we turned to the right as we go on [interstate 85 near Atlanta] ." *Dep. Linda Slade* at 64.

8. When Defendant's counsel asked her if she believed it was unusual for a car to "cut off" in the way she described, Plaintiff replied: "For a new car to act that way." *Dep. Linda Slade* at 109.

9. "In July 1988, Plaintiff was involved in an accident while driving the subject vehicle. Allegedly, the car's engine ceased operating while she was driving around a curve in the road, causing her to drive off the road and hit a tree." *Def.'s Statement of Uncontested Facts* § 21. Plaintiff explained that as she was driving along a big curve in the road, "the car cut off on me." *Dep. Linda Slade* at 11.

10. Plaintiff testified that the crash caused her head and back injuries, *Dep. Linda Slade* at 12, and suggested that it caused a slipped disk in her back. *Id.* at 25.

11. Plaintiff testified that both of her sons were riding in the car and were injured, as each hit his head on the window next to his seat. *Dep. Linda Slade* at 22.

12. Following this accident in July, 1988, Plaintiff did not consult an attorney to determine whether she had any claim against Chrysler or the Chrysler dealer to recover damages for injuries related to the crash that she attributed to the car's engine stalling. *Dep. Linda Slade* at 43–44. At her deposition, Plaintiff testified that she did not consult an attorney until she came into contact with her counsel in this action, Mr. Kirbo, in 1994.[1]

13. Plaintiff's husband, Charles Slade, testified that Plaintiff told him that

---

1. At her deposition, Plaintiff offered the following testimony to questions presented by Defendant's counsel:

   A. [The car] was riding fine. Then all of a sudden it just cut off for no reason.
   Q. And it had done that before?
   A. Yes.
   Q. Several times?
   A. Several times.
   Q. Many times?
   A. A lot of times.
   Q. And you got in an accident because it cut off on you again?
   A. Yes, sir.
   Q. And you didn't think to consult with an attorney at the time?
   A. I didn't think about it.
   Q. Okay. Did you think about it in 1988?
   A. No, sir.
   Q. Okay. Did you think about it at any time during 1989?

   A. I don't know the law that well.
   Q. I understand. But—
   A. I didn't know if you could after—
   Q. But you didn't go to an attorney to find out—
   A. No.
   Q. —whether you could or not in 1989?
   A. No, sir.
   Q. Did you go to an attorney in 1990?
   A. No.
   Q. Did you seek the advice of an attorney in 1991?
   A. No, sir.
   Q. Okay. Did you seek the advice of an attorney in 1992?
   A. No, sir.
   Q. Did you seek the advice of an attorney in 1993?
   A. No, sir.
   Q. Did you seek the advice of an attorney in 1994?

the accident occurred because "the car cut off." *Dep. Charles Slade*, at 44. In response to a question presented by Defendant's counsel concerning whether the accident had led him to feel like something was wrong with the car, Plaintiff's husband testified: "It had to be something wrong with it or it wouldn't have cut off. It was a lemon." *Id.* at 45.

14. Apart from taking the car to the dealer's service department numerous times over the seventeen months they owned and operated the car, Plaintiff's husband could not recall writing or otherwise contacting Chrysler concerning the problems with the car's engine stalling or the accident allegedly caused thereby. *Dep. Charles Slade* at 20–21.

15. The record does not contain any evidence that suggests Plaintiff had filed any other lawsuit relating to the car prior to initiating this action. Plaintiff filed her complaint with this Court on December 22, 1994.

## IV. Plaintiff's Motion for Partial Summary Judgment

Plaintiff alleges that Chrysler committed fraud by selling her a defective vehicle, which Chrysler knew at the time of sale was defec-

tive, and failed to disclose the existence of the defects to her. Since Plaintiff's claim accrued when she first could have brought and maintained her action to a successful result, *Mobley*, 178 Ga. at 392, 396, 173 S.E. 680, Plaintiff's cause of action accrued on the date of the allegedly fraudulent sale: February 10, 1987. Defendant denied any liability, asserting the statute of limitations in its defense. The statute of limitations bars an action for fraud initiated after February 10, 1991, unless Plaintiff can show that the statute should be tolled to encompass the time in which she filed her complaint.

▆ Plaintiff argues that partial summary judgment on the issue of the applicable statute of limitations should lie in her favor because she timely filed this suit within four years of discovering that actual fraud had been perpetrated against her by Chrysler. Specifically, Plaintiff argues that since "a cause of action for 'actual fraud' does not 'accrue' until the defrauded party actually discovers, or should have discovered, the existence of the facts which comprise *each* element necessary for that fraud."[2] *Mem.Supp. Pl.'s Mot. Partial Summ.J.* at 2. Plaintiff contends that in order for Defendant "to prevail on its statute of limitations defense, Chrysler must present evidence that Plaintiff either actually discovered, or should have discovered each of these elements of the fraud,[3] including *Chrysler's pre-sale knowl-*

---

A. Yes, sir.
Q. Okay, when did you first seek the advice of an attorney?
A. 1994.
Q. Do you know what month?
A. I'm not sure.
Q. Okay. Who advised you to go seek an attorney in 1994?
A. I was just talking to him. I was just talking to him one day, the car accident come up that I had had an Omni.
Q. With whom were you talking?
A. Huh?
Q. With whom were you having this conversation?
A. Mr. Kirbo [her counsel].
Q. Mr. Kirbo sometime in 1994.
A. Yes, sir.
*Dep. Linda Slade*, at 44–46.

2. The Court notes that Plaintiff's argument relies heavily on the theory that the statute of limitations tolls until such time that she discovered or should have discovered Defendant's scienter of her car's defects. The law does not embrace this outer limit: Fraud which is "flagrant and widely

publicized," or otherwise manifests itself, may serve notice upon the defrauded party to inquire into the nature and source of the wrongdoing, while a fraud that is "artfully concealed or convincingly practiced," or otherwise deters the defrauded party from inquiring further, "may justify greater inactivity" on the plaintiff who later seeks to toll the statute of limitations. *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5, 9 (5th Cir. 1967).

3. Citing *Wilhite v. Mays*, 239 Ga. 31, 32, 235 S.E.2d 532 (1977), Plaintiff sets forth the elements of fraud: "(a) that, at the time of purchase, the property was defective; (b) the defective condition could not be discovered by the exercise of due diligence prior to the purchase; (c) that the seller was aware of the problems; (d) that the seller did not disclose the problems; (e) that if the disclosure had been made, the property would not have been purchased (or the purchaser would not have paid as much)." *Mem. Supp. Pl.'s Mot. Partial Summ.J.*, at 2.

*edge of the problem, and the date of such discovery." Id.* at 2–3. Plaintiff insists that since " 'in this case an essential element of actual fraud would be Chrysler's knowledge that the vehicle was latently defective because of improper manufacture, that burden would include proof of Plaintiff's discovery of Chrysler's guilty pre-sale knowledge.' " *Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. Partial Summ.J.* at 2, *quoting and citing Lodge v. Popham,* 156 Ga.App. 825, 826, 275 S.E.2d 669 (1980), *reh'gs denied* Dec. 4 and Dec. 17, 1980.[4]

■ Apparently, Plaintiff is laboring under the misapprehension that *Defendant* carries the burden of proving that the statute of limitations ceased tolling over four years prior to the date Plaintiff initiated this action. On the contrary, Plaintiff carries the burden of showing affirmative actions by Defendant which constitute fraudulent concealment of the car's defects, and that she exercised reasonable diligence to discover her cause of action within the period imposed by the statute of limitations.[5]

■ In her Motion for Partial Summary Judgment, Plaintiff has not presented any evidence which indicates that Chrysler has engaged in fraud involving moral turpitude in failing to disclose the defects in the car's engine, either before or after the sale. Among the enumerated items of evidence cited by Plaintiff,[6] the only items which even remotely suggest that Defendant has engaged in fraud are the depositions by Plaintiff and her husband, Charles Slade. Their

testimony does reveal, as Plaintiff later summarizes, that "Plaintiff purchased a new vehicle; that she experienced repeated operational problems; [and] that on virtually every occasion she return[ed] the vehicle to Chrysler as she was supposed to." *Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. Partial Summ.J.* at 4. Their testimony does not, however, provide dispositive evidence that Chrysler Corporation knew of the latent defects in her car at the time of sale because of problems subsequently discovered. *Hall v. Richardson Homes,* 168 Ga.App. 593, 597, 309 S.E.2d 825 (1983), *cert. granted* Dec. 1, 1983 ("It is not a reasonable or logical inference from the mere fact that a builder-seller has constructed a house subsequently discovered to be defective that he *knowingly concealed* those defects and thereby deceived and defrauded the purchaser.") (citation and quotation omitted). Neither does their testimony indicate that any of the Chrysler dealer's mechanics affirmatively concealed the existence of any known defects from her.

Secondly, Plaintiff has not presented any evidence which suggests that she exercised any measure of diligence during the four years prior to filing this lawsuit to discover whether Defendant had defrauded her in the sale of a defective car. Although Georgia law clearly treats silence on the part of the wrongdoer as a "continuation of the original actual fraud," *Shipman,* 245 Ga. at 809, 267 S.E.2d 244, the steady series of problems Plaintiff experienced with her new car, including the serious crash she and her sons

---

4. Plaintiff's reliance on *Lodge* is curious, since in that case, the Court of Appeals sustained the grant of summary judgment in favor of the defendant/appellee, and explained that the plaintiffs/appellants had failed to sustain their burden of showing actual fraud by defendant/appellee: "While appellants' allegations and evidence establish that the septic tack system was improperly constructed and defective, they do not establish that appellee had any knowledge of any defects in the construction which he concealed from or misrepresented to appellants." 156 Ga. App. at 826, 275 S.E.2d at 670.

5. In *Hill, supra,* the Eleventh Circuit noted two important exceptions to these ordinary principles of tolling the statute of limitations: "The first is where the defendant has a fiduciary responsibility to make decisions.... The second exception is where the wrong is of such a character as to be self-concealing." 825 F.2d at 335, n. 2.

Clearly, Defendant has never maintained a fiduciary responsibility to Plaintiff. Plaintiff may be understood to argue that the character of the latent defects in her car operated to "conceal" alleged Defendant's fraud in selling her the car in the first place. However, as the Court explains more fully in part V, *infra,* the manifest problems in the car, in fact, may have revealed any alleged fraud by Defendant in the sale.

6. Plaintiff submits seven sources of evidence in support of her motion: (1) Plaintiff's Complaint; (2) Defendant's answer; (3) Defendant's responses to the mandatory interrogatories; (4) Plaintiff's First Interrogatories to Defendant [Doc. No. 26]; (5) Defendant's Response to Plaintiff's First Interrogatories to Defendant [Doc. No. 33]; (6) Deposition of Linda K. Slade; and (7) Deposition of Charles Slade. *Pl.'s Mot. Partial Summ.J.* at 2.

endured as a result of the car's engine stalling, pierced any alleged silence by Defendant and its agents. The pattern of problems with her car, although apparently clear to her now, should have alerted her then to explore whether Defendant had committed any wrongdoing in the course of either the original sale or the subsequent efforts to "repair" it. Instead, Plaintiff simply did nothing.

Because Plaintiff has failed to present any evidence which shows that judgment in her favor is appropriate, the Court holds that her Motion for Partial Summary Judgment should be denied.

## V. Defendant's Motion for Summary Judgment

Defendant argues that, "assuming arguendo that Defendant did conceal an alleged defect in the subject vehicle, Plaintiff could have brought a suit based on fraud from the date of that purchase, or February 10, 1987." *Def.'s Br. Support Mot.Summ.J.* at 8. The statute of limitations for fraud runs for four years from that date, and therefore expired on February 10, 1991, years before Plaintiff filed this action. Notwithstanding this position, Defendant further argues that even if any alleged fraud on its behalf concealed the defects in her car, the statute of limitations is tolled only until such time that Plaintiff could have discovered such fraud by the exercise of reasonable diligence. *Id.* at 9. Defendant argues that "the unequivocal, uncontradicted testimony of Plaintiff regarding the automobile accident, which occurred in 1988, clearly put Plaintiff on notice that there was something seriously amiss with the vehicle, which required diligent investigation." *Id.* at 11.

In support of her position that the statute of limitations tolls until such time that she actually discovered the alleged fraud, or should have discovered it, Plaintiff relies chiefly on the authority of *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5 (5th Cir.1967). *Mem. Supp. Pl.'s Mot. Partial Summ.J.* at 2. In that case, the plaintiff sued to recover damages from a fraudulent stock transaction in which defendants allegedly misrepresented the value of the security held by plaintiff, in violation of Section 10(b) of the Securities Exchange Act of 1934. The district court held that plaintiff's action was barred under the applicable Florida statute of limitations because the plaintiff was on notice of the facts constituting the fraud more than three years prior to the date that the plaintiff's filed its complaint, and thus granted summary judgment for the defendants. The Court of Appeals reversed, and held that there was a genuine issue of material fact to be resolved concerning whether the plaintiffs were deterred from filing their suit due to misrepresentations by the defendants or failed to file their suit for lack of due diligence on their part. 386 F.2d at 10.

▉ Like the Plaintiff in the instant action, the plaintiff in *Muscat* maintained that the statute of limitations for an action for fraud under the relevant Florida law tolled until such time that the plaintiff actually discovered the material facts which constituted the fraud. The Court of Appeals rejected this "subjective" interpretation of discovery, and instead held that "discovery" of fraud is determined "according to an objective standard; that is, 'discovery' means either actual knowledge or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation." 386 F.2d at 8–9.

▉ Judging according to this objective standard, the Court finds that Plaintiff's affidavit, her sworn testimony, and the sworn testimony of her husband, together provide abundant evidence from which to conclude that she plainly recognized a serious problem with her car's engine stalling that was not improving, despite her frequent efforts to have the dealer's mechanics repair it. When her car's engine "cut off" in July, 1988, she and her two sons careened off the road and into a tree. The injuries that they endured in that crash served notice tantamount to a street sign that she should inquire into whether any cause of action had accrued to compensate her for the total loss she sustained to her car, not to mention the injuries to herself and her sons. Nevertheless, she did not seek legal counsel. More significantly, neither she nor her husband wrote or otherwise attempted to contact the Defendant to report the problems they had experienced with her car, or ultimately, the crash. Moreover, Plaintiff has not presented any

evidence in response to Defendant's motion which suggests that Chrysler Corporation or any of its agents has, since July, 1988, concealed the defect that may have existed in her car or otherwise dissuaded her from initiating any action to compensate her for her losses.

Plaintiff also relies on the authority of the decision in *Anderson v. Sybron Corp.*, 165 Ga.App. 566, 353 S.E.2d 816, *affirmed*, 251 Ga. 593, 310 S.E.2d 232 (1983). *Mem.Supp. Pl.'s Mot. Partial Summ.J.* at 2. In that case, the Court of Appeals of Georgia reversed the trial court's grant of summary judgment for defendants on the grounds that the statute of limitations barred the plaintiffs' action. The court held that "[a]ppellants could not maintain an action for damages for cataracts allegedly caused by [ethylene oxide] until they knew or should have known through the exercise of reasonable diligence not only that they had the cataracts but that the cataracts were caused by [ethylene oxide]." 165 Ga. App. at 568, 353 S.E.2d at 817. The evidence in that case, however, indicated that plaintiffs/appellants repeatedly consulted with various physicians about their illness, until finally, the neurologist attending to one of the plaintiffs/appellants linked their condition with the chemical agent which could have caused it. In short, the plaintiffs/appellants diligently, yet rather ordinarily, inquired into the nature of their illness until they realized its probable cause. In that key respect, they differed markedly from the Plaintiff here, who took no action after the car's engine "cut off" in July, 1988, to determine the source of her car's problems and who may be responsible for compensating her for the damages caused by its defects.

Plaintiff is correct to suggest that a wrongdoer cannot escape liability for its fraud simply through the passage of time. Yet Georgia law imposes a reasonable statute of limitations that balances the need to preserve a cause of action in those instances in which the wrongdoer cooly perpetrates and conceals its fraud, against the responsibility of a would-be plaintiff to timely prosecute her cause of action once she detects or should detect that something is wrong.[7] The Plaintiff in the instant action cannot avoid her responsibility to undertake reasonable diligence to detect the possibility that Defendant had defrauded her in the sale of her car once she had such a clear knowledge of her car's manifest defects. Mindful that the "concept of due diligence is not imprisoned within the frame of a rigid standard," *Muscat*, 386 F.2d at 9, the Court finds that this is not a case in which a jury should be called upon to "unravel a tangled skein of facts." *Id.* Six years after she survived a crash that she clearly recalls being caused by the car "cutting off," her car could not be recovered, one of the mechanics who worked on it died, and no firm record of her car's actual defects could be presented into evidence. Judging from the evidence that has survived the passage of time, no reasonable jury could conclude that Plaintiff acted with reasonable diligence to detect the fraud she has alleged against Defendant in order to toll the operation of the statute of limitations.

Assuming, without deciding, that Plaintiff's evidence could amount to the conclusion that Defendant committed fraud by selling her a vehicle which it knew to be defective, the Court holds that Plaintiff's action is barred by the statute of limitations because she failed to exercise reasonable diligence to detect such fraud until such time to encompass the date on which she initiated this action. Accordingly, the Court holds that Defendant's Motion for Summary Judgment should be granted.

## CONCLUSION

For the reasons set forth in part IV, Plaintiff's Motion for Partial Summary Judgment (Doc. No. 73) should be, and hereby is, **DENIED;**

---

7. *See, Stricker v. Epstein*, 213 Ga.App. 226, 229, 444 S.E.2d 91 (1994), *cert. denied*, Sept. 8, 1994 ("we nonetheless conclude that plaintiffs cannot rely on the tolling provisions of O.C.G.A. § 9–3–96 because if they had exercised reasonable diligence they would have discovered the fraud more than two years before they filed their claim. Plaintiffs stopped receiving their monthly checks in September 1988 and should have realized that something was wrong at that time."); *see also, Jones v. Board of Regents of the Univ. Sys. of Georgia*, 219 Ga.App. 448, 466 S.E.2d 869 (1995), *cert. denied*, Apr. 1, 1996; *Hartley v. Gago*, 202 Ga.App. 770, 415 S.E.2d 510 (1992); *Owen v. Mobley Constr. Co., Inc.*, 171 Ga.App. 462, 320 S.E.2d 255 (1984); *Murray v. Shearson Hayden Stone, Inc.*, 524 F.Supp. 304 (N.D.Ga. 1980).

For the reasons set forth in part V, Defendant's Motion for Summary Judgment (Doc. No. 100) should be, and hereby is, **GRANTED**;

Plaintiff's Motion for Class Certification (Doc. No. 20) should be, and hereby is, **DENIED,** as moot;

Defendant's Motion for Hearing on Plaintiff's Motion for Class Certification (Doc. No. 22) should be, and hereby is, **DENIED,** as moot;

Plaintiff's Motion for Permission to Contact Vehicle Purchasers (Doc. No. 90) should be, and hereby is, **DENIED,** as moot;

Defendant's Motion for Permission to File Supplemental Brief in Opposition to Plaintiff's Motion for Class Certification (Doc. No. 95) should be, and hereby is, **DENIED,** as moot;

Defendant's Motion to Disqualify Plaintiff's Counsel of Record (Doc. No. 106) should be, and hereby is, **DENIED,** as moot;

Defendant's Motion to Strike Portion of Affidavits of Linda Slade and Joyce Day (Doc. No. 108) should be, and hereby is, **DENIED,** as moot.

The Court **DIRECTS** the Clerk of the Court to **ENTER JUDGMENT** in favor of **DEFENDANT.**