311 Ga. 791
FINAL COPY

S20G1404. ARMSTRONG et al. v. CUFFIE et al.

BETHEL, Justice.

We granted certiorari to consider whether the Court of Appeals properly identified the accrual date of the legal malpractice claim in this case. See *Cuffie v. Armstrong*, 355 Ga. App. 471, 473-476 (1) (843 SE2d 599) (2020). The Court determined that the accrual date for the malpractice action based on failure to protect an underinsured motorist ("UM") claim was the date on which the plaintiff's attorney first became aware that the plaintiff potentially had a UM claim with available coverage. See id. at 475 (1). Under the facts of this case, we disagree and hold that the accrual date was the last day counsel could protect the client's UM claim by lawfully effecting service on the UM carrier. Thus, for the reasons set forth below, we reverse the judgment of the Court of Appeals.

*Factual Background and Procedural History*

1. This case involves legal malpractice claims brought by JoEtta Armstrong against her former attorney, Thomas Cuffie, the Cuffie Law Firm, and Cuffie and Associates, P.C. (collectively, "the Cuffie Firm"). The Court of Appeals summarized the facts relevant to this appeal, which are not in dispute, as follows:

> After JoEtta Armstrong was injured and her husband was killed in a motorcycle accident, she hired attorney Thomas Cuffie to handle all her claims against the other drivers. . . . [T]he record shows that the accident occurred in early August 2009. Jarvis Gibson, the driver of one of the cars involved in the accident, was charged with various driving violations based on the accident. A few days after the accident, Armstrong hired Cuffie, and she signed a written contract for representation.[1]
>
> In January 2010, Cuffie received a letter from State Farm [Mutual Automobile Insurance Company ("State Farm")] regarding [UM] coverage under Armstrong's policy. Neither Cuffie nor anyone else from the Cuffie Firm followed up on the UM coverage or presented a UM claim to State Farm.
>
> On March 2, 2010, the Cuffie Firm filed a wrongful death and personal injury suit against Gibson and the others involved in the accident, and their respective insurance companies and employers: RLI Insurance Company, Milan Express Company, Raymond Smith, Patrick Riley, and United Road Services. On November 2, 2011, a jury acquitted Gibson of all criminal charges arising from the accident.

---

[1] Armstrong sued on behalf of herself, individually, and as surviving spouse, and as a co-representative of her husband's estate.

In August 2013, Armstrong settled her claims against RLI Insurance, Milan Express, and Smith for $1,250,000, and she signed a release for any claims she might have had against these defendants. Thirteen months later, Armstrong settled her remaining claims against Gibson for $51,000. . . .

[On July 21,] 2017, Armstrong filed suit for legal malpractice against the Cuffie Firm. She voluntarily dismissed that action and then timely filed the instant renewal action,[2] alleging breach of contract and breach of fiduciary duty arising from the failure to seek UM coverage.[3]

The Cuffie Firm filed its answer and counterclaim, and moved to dismiss the complaint as barred by the applicable statute of limitation.[4] Relying on OCGA § 33-7-11 (d),[5] the Cuffie Firm argued that the statute of

---

[2] Armstrong dismissed the original malpractice suit and timely filed a renewal action, but the parties agree that July 21, 2017 is the relevant date for determining if Armstrong's malpractice action was timely.

[3] Armstrong's suit also alleged that Cuffie and the Cuffie Firm failed to advise her about a lien that arose under the Employee Retirement Income Security Act and included a claim for attorney fees under OCGA § 13-6-11. Issues relating to those claims are not before us.

[4] "It has long been the law in this state that a cause of action for legal malpractice, alleging negligence or unskillfulness . . . , is subject to the four-year statute of limitation in OCGA § 9-3-25." (Emphasis omitted.) *Royal v. Harrington*, 194 Ga. App. 457, 457 (390 SE2d 668) (1990). The Cuffie Firm argued that OCGA § 9-3-25 barred Armstrong's legal malpractice claim.

[5] OCGA § 33-7-11 (d) provides:

In cases where the owner or operator of any vehicle causing injury or damages is known, and either or both are named as defendants in any action for such injury or damages, and a reasonable belief exists that the vehicle is an uninsured motor vehicle under subparagraph (b) (1) (D) of this Code section, a copy of the action and all pleadings thereto shall be served as prescribed

limitation for Armstrong's malpractice claim based on the UM coverage began to run in 2011 when it could no longer seek UM coverage. Thus, the four-year limitation period applicable to legal malpractice claims expired in 2015. . . . Armstrong responded, arguing that the time period to file the UM claim tolled under OCGA § 9-3-99[6] until two years from the completion of Gibson's criminal trial, and the limitation period for her malpractice suit did not begin to run until the expiration of that two-year period [in November 2013]. As such, she asserted that her complaint was timely because it was filed before November 2017[.]

The trial court denied the motion to dismiss, summarily finding that the claims were timely filed. The Cuffie Firm moved for reconsideration, which the trial court also denied, and the Cuffie Firm then requested and received a certificate of immediate review. [The Court of Appeals] granted the application for interlocutory review[.]

*Cuffie*, 355 Ga. App. at 471-473. Relevant to the issue before us, the

Court of Appeals held that Armstrong's legal malpractice claim

---

by law upon the insurance company issuing the policy as though the insurance company were actually named as a party defendant. . . .

[6] OCGA § 9-3-99 provides:

The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years[.]

4

arising from the failure to seek UM coverage was barred by the four-year statute of limitation. See id. at 475-476 (1). The Court of Appeals specifically determined that Armstrong's cause of action for malpractice accrued in January 2010 when the Cuffie Firm first knew or should have known that a potential claim for UM coverage existed against State Farm. See id. at 474-475 (1). The Court of Appeals also determined that the four-year statute of limitation was not tolled by OCGA § 9-3-99 because Armstrong's malpractice suit was a contract action, and the tolling provision applies only to tort actions. See id. at 476 (1).

Armstrong filed a timely petition for certiorari in this Court, which we granted, directing the parties to address a single question:

> Whether the Court of Appeals erred in its determination of the accrual date for Armstrong's legal malpractice action based on her lawyer's failure to preserve a claim against her UM carrier.

*The Proper Accrual Date for the Malpractice Action*

2. "It has been long recognized and is well established that a statute of limitation begins to run on the date a cause of action on a

5

claim accrues." *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805 (1) (273 SE2d 16) (1980). And in Georgia, an action for legal malpractice accrues from the date of the attorney's breach of duty and alleged negligent or unskillful act. See *Royal v. Harrington*, 194 Ga. App. 457, 458 (390 SE2d 668) (1990). "In other words, the period within which a suit may be brought is measured from the date upon which the plaintiff could have successfully maintained the action." *Jankowski*, 246 Ga. at 805 (1); see also *Mobley v. Murray County*, 178 Ga. 388, 388 (1) (173 SE 680) (1934) ("When the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result . . . . A right of action has its inception from the time there has been a breach of duty; and this would entitle the party to file suit for the breach, without regard to whether any actual damage had in fact resulted." (punctuation omitted)). Accordingly, the question before this Court is when the Cuffie Firm's alleged inactions rose to the level of actionable professional

6

negligence such that Armstrong could have brought a viable legal malpractice claim.

To successfully bring a legal malpractice action and survive a motion to dismiss, a plaintiff must establish three elements: (1) employment of the defendant attorney; (2) failure of the attorney to exercise ordinary care, skill, and diligence; and (3) that the negligence caused the plaintiff's damages. See *Leibel v. Johnson*, 291 Ga. 180, 181 (728 SE2d 554) (2012); see also *Jankowski*, 246 Ga. at 806 (1) (explaining that actionable nominal damages arise upon an attorney's wrongful act or omission and that such act or omission triggers the statute of limitation). In this case, the parties agree that the Cuffie Firm was engaged by Armstrong and had a duty to Armstrong to pursue legal recourse in connection with the motor vehicle accident, which included presenting a UM claim to State Farm within the appropriate time period. Further, the parties also agree that a legal malpractice claim may be based on counsel's failure to take actions to protect a client's interests, including preserving a claim for insurance coverage. This leaves the question

7

of when the alleged malpractice resulted in a cognizable loss to Armstrong or rather, the point at which Armstrong could have first "successfully maintained" her claim against the Cuffie Firm.

To determine when Armstrong could have first successfully maintained her legal malpractice claim against the Cuffie Firm, we must determine the definitive date of the professionally negligent or unskillful act, i.e., when the Cuffie Firm should have served State Farm to preserve Armstrong's claim for UM coverage. In deciding the accrual date for this case, the Court of Appeals held that the original failure to seek UM coverage was in January 2010 when the Cuffie Firm first knew or should have known that a potential claim for UM coverage existed against State Farm. See *Cuffie*, 355 Ga. App. at 475 (1). This conclusion incorrectly assumes that because plaintiff's counsel had notice and a reasonable belief that UM coverage was implicated, counsel committed malpractice by failing to immediately serve a UM carrier upon learning that the client had a potential claim for UM coverage. While it is true that the Cuffie Firm could have provided notice at the time it filed the underlying

8

tort suit, Georgia law does not support the determination that failure to do so immediately constituted malpractice.

Instead, Georgia law[7] provides that a UM carrier must be served "as though the insurance company were actually named as a party defendant[,]" i.e., within the time allowed for valid service on any other defendant in the tort action. OCGA § 33-7-11 (d). We see no basis under the circumstances of this case for determining that an attorney has committed an act of malpractice by failing to serve a UM carrier before the lawful period for service has run.[8] Thus, because the Cuffie Firm could serve State Farm at any time allowed for service of any other named defendant, Armstrong could not successfully bring an action against the Cuffie Firm for failure to protect her UM claim until the time for service on all named

---

[7] We do not address here what the notice provision under the contract terms of Armstrong's UM policy with State Farm may have required, if such existed and were applicable, and what effect, if any, it would have had on coverage under the State Farm policy.

[8] The record does not suggest that Armstrong sustained or alleges any unique harm related to a delay of serving State Farm. Further, Armstrong has never alleged that the Cuffie Firm had any reason to believe that Armstrong required service prior to the lawful deadline or would sustain any harm in waiting until the deadline to effect service. We express no opinion about a case where such evidence or allegations might be present.

defendants in her tort action had expired. Prior to that time, Armstrong could not have successfully brought a malpractice suit against the Cuffie Firm because Armstrong had not yet lost her interest in the UM claim. So, we must determine the final date on which the claim for UM coverage could have been timely served upon State Farm.

Generally, actions for wrongful death and personal injury must be brought within two years after the right of an action accrues. See OCGA § 9-3-33. However, this limitation period may be tolled by OCGA § 9-3-99, which relates to active criminal prosecutions. This tolling provision applies to all defendants so long as the crime victim brings a tort action arising out of the facts and circumstances relating to the commission of such alleged crime within six years, with certain exceptions not applicable here. See id.; see also *Beneke v. Parker*, 285 Ga. 733, 733 (684 SE2d 243) (2009).

In this case, the parties agree that OCGA § 9-3-99 tolled the statute of limitation applicable to Armstrong's tort case until Gibson's criminal matter was terminated on November 2, 2011.

Thus, the statute of limitation for the underlying tort case expired on November 2, 2013.[9] Because the Cuffie Firm could serve State Farm, like any other named defendant, until that date,[10] the Cuffie Firm was not subject to a cognizable claim for malpractice for failing to serve State Farm prior to November 3, 2013. Accordingly, the four-year statute of limitation for the legal malpractice action did not begin to run until November 3, 2013, at the earliest. And because Armstrong filed her malpractice suit against the Cuffie Firm on July 21, 2017, within the four-year limitation period, it was not time-barred.[11] We therefore reverse the judgment of the Court of Appeals

---

[9] Much of the parties' briefing relies on the Court of Appeals' incorrect premise that the accrual date for the malpractice action date was January 2010 when the Cuffie Firm first became aware of UM coverage. However, because this was not the proper accrual date, we need not consider the parties' additional arguments based on this line of reasoning.

[10] Indeed, with at least "reasonable diligence," service might have been lawfully effected even after that date. See *Van Omen v. Lopresti*, 357 Ga. App. 9, 9 (849 SE2d 758) (2020).

[11] We express no opinion as to whether OCGA § 9-3-99 tolled the statute of limitation applicable to the malpractice claim. Rather, we hold only that OCGA § 9-3-99 tolled the statute of limitation and related service provisions applicable to Armstrong's underlying tort action against Gibson and any other named defendants. That tolling affected the date by which the UM carrier could lawfully be served which established the malpractice claim's accrual date.

and remand this case for further proceedings consistent with this opinion.

*Judgment reversed. All the Justices concur, except McMillian, J., disqualified.*

Decided June 21, 2021.

Certiorari to the Court of Appeals of Georgia — 355 Ga. App. 471.

*Gardner Trial Attorneys, Timothy S. Gardner, Henrietta G. Brown*, for appellants.

*The Cuffie Law Firm, Thomas F. Cuffie, Magua B. Benson*, for appellees.

*James A. Neuberger*, amicus curiae.