NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 22, 2024

S23G1124. TITSHAW et al. v. GEER et al.

COLVIN, Justice.

After a bankruptcy proceeding went awry, the plaintiffs in this case filed suit against lawyers and law firms who had advised them to file for bankruptcy. The plaintiffs asserted tort claims for legal malpractice and claims for breach of written contracts for legal services, alleging, among other things, that the lawyers committed legal malpractice in executing their duties under the contracts. The defendants moved to dismiss both sets of claims as barred by OCGA § 9-3-25's four-year statute of limitation. And although the trial court only granted those motions as to the tort-based legal-malpractice claims, it later granted a summary-judgment motion filed by a subset of the defendants on the ground that the breach-of-contract-for-legal-services claim against those defendants was also

barred by OCGA § 9-3-25. On appeal, the Court of Appeals likewise concluded that the tort-based legal-malpractice claims were barred by OCGA § 9-3-25's statute of limitation. See *Titshaw v. Geer*, 368 Ga. App. 266, 268-269 (1) (888 SE2d 301) (2023). And the Court of Appeals further concluded that the breach-of-contract-for-legal-services claims were due to be dismissed as "duplicative" because they were based on the same conduct underlying the tort-based legal-malpractice claims. See id. at 269-270 (2), (4).

We granted certiorari to address which statute of limitation applies to a claim for breach of a contract for legal services — OCGA § 9-3-24's six-year statute of limitation for "actions upon simple contracts in writing" or OCGA § 9-3-25's four-year statute of limitation for "actions . . . for the breach of any contract not under the hand of the party sought to be charged, or upon any implied promise or undertaking." And we further granted certiorari to determine whether the Court of Appeals erred in concluding that a claim for breach of a contract for legal services should be dismissed if it is based on the same conduct underlying a tort-based legal-

2

malpractice claim that the court has concluded is barred by the statute of limitation.

As explained below, we conclude that a breach-of-contract-for-legal-services claim can be governed by either OCGA § 9-3-24's six-year statute of limitation or OCGA § 9-3-25's four-year statute of limitation, and that which statute of limitation applies must be determined under the framework set out in *Newell Recycling of Atlanta, Inc. v. Jordan Jones & Goulding, Inc.*, 288 Ga. 236 (703 SE2d 323) (2010). We further hold that, in Division 4 of its opinion, the Court of Appeals erred in concluding that a claim for breach-of-contract-for-legal-services was due to be dismissed as "duplicative" of a legal-malpractice claim that it had concluded was barred by OCGA § 9-3-25's statute of limitation. *Titshaw*, 368 Ga. App. at 270 (4). As explained below, the Court of Appeals erred in failing to apply the well-established motion-to-dismiss standard to determine whether, under *Newell Recycling*'s framework, it was possible for the plaintiffs to prove that OCGA § 9-3-24's six-year statute of limitation applied to the breach-of-contract-for-legal-services claim.

Accordingly, we vacate the Court of Appeals' judgment, and we remand for further proceedings consistent with this opinion.[1]

1.    David Titshaw is the majority owner and managing member of Taylor Investment Partners II, LLC, TIP II - Ansley, LLC, and TIP II - Suburban, LLC (the "TIP entities"), which operate restaurants in Atlanta and Decatur under franchise agreements. After the TIP entities filed a Chapter 11 bankruptcy petition, giving the franchisor grounds for terminating the franchise agreements, Titshaw and the TIP entities (collectively, "Plaintiffs") filed suit against defendants Will B. Geer and the Law Office of Will B. Geer, LLC (collectively, "Geer"), and Cohen Pollock Merlin Turner, P.C. ("CPMT"), who had advised Plaintiffs to file the Chapter 11 bankruptcy petition. Plaintiffs asserted tort claims for legal malpractice and claims for breach of the separate contracts for legal services that Plaintiffs had entered into with Geer and CPMT.

The trial court granted Geer's and CPMT's motions to dismiss the legal-malpractice claims as barred by OCGA § 9-3-25's four-year

---

[1] We thank Georgia Watch, Inc. for its amicus brief in this case.

statute of limitation but summarily denied their motions to dismiss the breach-of-contract claims on the same grounds.[2] On summary judgment, the trial court concluded that the breach-of-contract claim against Geer was likewise governed by, and barred under, OCGA § 9-3-25's four-year statute of limitation.

On appeal, the Court of Appeals affirmed in part and reversed in part. As relevant here, in Division 1 of its opinion, the Court of Appeals affirmed the trial court's dismissal of Plaintiffs' tort claims for legal malpractice against both Geer and CPMT as barred by OCGA § 9-3-25's four-year statute of limitation.[3] See *Titshaw*, 368

---

[2] It does not appear that there was any dispute in the trial court as to which statute of limitation applied to the tort-based legal-malpractice claims. Relying on case law that cited OCGA § 9-3-25, the defendants argued in their motions to dismiss that those claims were governed by a four-year limitation period, and Plaintiffs did not argue otherwise in their briefs opposing the motions to dismiss.

[3] The Court of Appeals followed the trial court's lead in applying OCGA § 9-3-25's four-year statute of limitation to the tort-based legal-malpractice claims. In doing so, the Court of Appeals did not address the body of Court of Appeals case law stating that legal-malpractice claims sounding in tort are instead governed by the shorter limitation periods provided for in OCGA § 9-3-33. See, e.g., *Coleman v. Hicks*, 209 Ga. App. 467, 468 (1) (433 SE2d 621) (1993) (noting that a legal-malpractice claim can sound in either contract or tort and that a tort-based legal-malpractice claim is governed by OCGA § 9-3-33's "one-year and/or two-year limitation [period]"). See also OCGA § 9-3-33 (providing in relevant part that "actions for injuries to the person shall be

5

Ga. App. at 268-269 (1). As to Plaintiffs' breach-of-contract-for-legal-services claims, the Court of Appeals affirmed the trial court's grant of summary judgment to Geer in Division 2 of its opinion and reversed the trial court's denial of CPMT's motion to dismiss in Division 4 of its opinion. See id. at 269-270 (2), (4). The court employed the same reasoning in both divisions. Specifically, in Division 2 of its opinion, the Court of Appeals concluded that the trial court properly granted summary judgment to Geer on Plaintiffs' breach-of-contract claim because the claim was "based upon the same conduct that form[ed] the basis of the legal malpractice claim" (namely, the defendants' conduct in negligently advising Plaintiffs to file for bankruptcy), and the breach-of-contract claim was therefore "duplicative" of the tort-based legal-malpractice claim. Id. at 269 (2). And in Division 4 of its opinion, the Court of

brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues"). As noted below, whether the Court of Appeals correctly determined that the tort-based legal-malpractice claims were barred by OCGA § 9-3-25's four-year limitation period is outside the scope of the questions posed by this Court in our order granting certiorari. Accordingly, we express no opinion on whether the Court of Appeals applied the correct statute of limitation to Plaintiffs' legal-malpractice claims sounding in tort.

6

Appeals concluded that the trial court should have dismissed Plaintiffs' breach-of-contract claim against CPMT "[f]or the reasons[ ] stated above in Division 2 of this opinion." Id. at 270 (4).

2. Before turning to the merits of this appeal, we briefly address the scope of our review in this case. This case comes to us by way of two appeals from the trial court that resulted in two judgments of the Court of Appeals. See *Titshaw*, 368 Ga. App. at 270. In the first appeal (Court of Appeals Case No. A23A0410), Plaintiffs challenged the trial court's order dismissing the tort-based legal-malpractice claims against Geer and CPMT, as well as the trial court's order granting Geer's motion for summary judgment on the claims against Geer for breach of contract and attorney fees. The Court of Appeals' rulings as to the first appeal appear in Division 1 through 3 of its opinion. See id. at 268-269 (1) - (3). In the second appeal (Court of Appeals Case No. A23A0439), CPMT challenged the trial court's order denying its motion to dismiss Plaintiffs' claim against CPMT for breach of contract for legal services. The Court of Appeals' ruling as to the second appeal appears in Division 4 of its

7

opinion. See id. at 270 (4).

Our order granting certiorari included both Court of Appeals case numbers and thus both judgments of the Court of Appeals. But our certiorari questions concerned only the Court of Appeals' rulings on the breach-of-contract claims, that is, the rulings in Divisions 2 and 4 of the Court of Appeals' opinion. See *Titshaw*, 368 Ga. App. at 269-270 (2), (4). And while the case was pending before us, Plaintiffs and Geer settled the case between them, rendering the first appeal (Court of Appeals Case No. A23A0410) moot as to the dispute between Plaintiffs and Geer over the breach-of-contract claim addressed in Division 2 of the Court of Appeals' opinion. Cf. *WMW, Inc. v. Am. Honda Motor Co.*, 291 Ga. 683, 685 (2) n.1 (733 SE2d 269) (2012) (noting that a settlement generally moots an appeal).

As a result, we confine our merits review to Division 4 of the Court of Appeals' opinion, which addressed Appellant's breach-of-contract-for-legal-services claim against CPMT. See *Titshaw*, 368 Ga. App. at 270 (4). As explained below, we vacate that division. And because the Court of Appeals based its ruling in Division 4 on its

8

reasoning in Division 2, a conflict in precedent would arise if we vacated the former division but not the latter. Accordingly, we exercise our discretion to vacate Division 2 of the Court of Appeals' opinion as well. See *WMW*, 291 Ga. at 685 (2) n.1 (relying on *U.S. Bancorp Mtg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 25 (2) (115 SCt 386, 130 LE2d 233) (1994), to explain how settlement on appeal generally affects a judgment under review). See also *U.S. Bancorp Mtg. Co.*, 513 U.S. at 29 (2) (noting that "equitable" principles underlie an appellate court's decision whether to vacate a judgment under review, and that, although "mootness by reason of settlement [generally] does not justify vacatur of a judgment under review[,] . . . exceptional circumstances may conceivably counsel in favor of such a course").

3.    Turning to the merits, in the instant case, Plaintiffs raised tort claims for legal malpractice and breach-of-contract claims based on alleged breaches of written contracts for legal services. See *Villanueva v. First Am. Title Ins. Co.*, 292 Ga. 630, 631-632 (740 SE2d 108) (2013) (noting that, although "[a] claim of legal

9

malpractice may . . . sound in tort," a legal malpractice action "based upon breach of a duty imposed by the contract of employment between the attorney and the client" generally "sounds in contract"). As to the latter claims, and as relevant here, Plaintiffs alleged that CPMT had breached the implied promise to perform professionally under a written contract for legal services and had also breached specific provisions of that written contract. We granted certiorari to determine which statute of limitation governs claims for breaching contracts for legal services, like those asserted by Plaintiffs in this case. As explained below, we conclude that the framework set out in *Newell Recycling* for determining which statute of limitation applies to a claim for breaching a contract for professional services applies with equal force to breach-of-contract-for-legal-services claims. And as further explained below, we conclude that applying *Newell Recycling* in this manner does not contradict statements we have made in other cases about the limitations period applicable to such claims.

(a)    As a general matter, breach-of-contract actions in Georgia

10

are governed by OCGA § 9-3-24's six-year statute of limitation if they are premised on a written contract with the defendant and by OCGA § 9-3-25's four-year statute of limitation if they are premised on an oral or implied contract with the defendant. See OCGA § 9-3-24 ("All actions upon simple contracts in writing shall be brought within six years after the same become due and payable."); OCGA § 9-3-25 ("All actions upon open account, or for the breach of any contract not under the hand of the party sought to be charged, or upon any implied promise or undertaking shall be brought within four years after the right of action accrues.").

In *Newell Recycling*, we granted certiorari to determine whether "a professional malpractice claim premised on a written contract is governed by the four-year statute of limitation in OCGA § 9-3-25" or "the six-year statute of limitation in OCGA § 9-3-24." *Newell Recycling*, 288 Ga. at 237. We concluded that the latter statute of limitation applied, reasoning that OCGA § 9-3-25's "plain terms" showed that its four-year statute of limitation "only applies where no sufficiently written contract exists and a cause of action

11

can therefore be based solely on the breach of an express oral or implied promise," and that "the Legislature and this Court have made clear that" OCGA § 9-3-24's six-year statute of limitation applies where a breach of contract action is pursued based on "a complete written contract." Id. at 237-238.

"In determining which statute of limitation applies," we explained, "the threshold inquiry is to determine whether a written agreement actually exists between the parties such that any implied duties sued upon would have grown directly out of the existence of the written contract itself." *Newell Recycling*, 288 Ga. at 238. We clarified that, where an "enforceable, written contract" between the parties exists and the breach-of-contract claim stems from a duty arising, "not remotely or ultimately, but immediately . . . from [the] instrument[ ] of writing," OCGA § 9-3-24's six-year statute of limitation applies. Id. at 237-238 (citations and punctuation omitted). And this is so, we said, "regardless of whether the alleged breach stems from the express terms of the agreement or duties that are implied in the agreement as a matter of law," such as "an implied

12

promise to perform professionally pursuant to a written agreement for professional services." Id. We further clarified that, "[w]here the agreement is incomplete, such that the writing does not form a contract or the promise allegedly broken stems from a purely oral agreement, the four-year statute of limitation of OCGA § 9-3-25 applies." Id. at 238.

Although *Newell Recycling* concerned contracts for professional engineering services, see *Newell Recycling*, 288 Ga. at 236, its reasoning applies with equal force to contracts for other professional services, including contracts for legal services. As applied to a claim for breaching a contract for legal services, *Newell Recycling* provides that the claim is governed by OCGA § 9-3-24's six-year statute of limitations if it is premised on an "enforceable, written contract" between the parties and the alleged breach concerns a "dut[y] . . . grown directly out of" the written instrument, meaning that the complained-of conduct fell within the scope of the legal services that the defendant agreed to perform under the "written contract itself."

Id. at 237-238 (citation and punctuation omitted).[4] And "because an implied promise to perform professionally pursuant to a written agreement for [legal] services would be written into the contract for [legal] services by the law," a claim alleging a "breach of this implied obligation . . . [is] governed by the six-year statute of limitation of OCGA § 9-3-24" so long as the alleged breach "directly" relates to the legal services that the defendant agreed to undertake pursuant to the written contract. Id. (citation and punctuation omitted).[5] By contrast, when no written contract for legal services exists, a written

---

[4] Cf. *Jenkins v. Prime Ins. Co.*, No. 1:20-CV-01263-JPB, 2021 WL 807612, at *4 (II) (A) (1) (N.D. Ga. Mar. 3, 2021) (holding that, under *Newell Recycling*, the six-year limitations period could not apply because "[w]hatever legal advice [the attorney was] alleged to have provided [could not] be considered an agreed upon service rendered pursuant to the Policy," which was "not an agreement for professional services that set[ ] forth the specific responsibilities [the attorney] . . . agreed to undertake," and because the "advice was [at best] incidental to the administration of the Policy").

[5] See *Julmist v. Prime Ins. Co.*, 92 F4th 1008, 1019 (III) (B) (1) (11th Cir. 2024) (explaining that, under *Newell Recycling*, "[t]o determine whether the six-year period applies [to a claim that the defendant breached implied duties in a written contract], courts must look to whether any implied duties that were allegedly breached would have *grown directly* out of the existence of the written contract itself"; and holding that OCGA § 9-3-25 applied to a claim where the alleged breach "did not grow out of the written contract" at issue, which "was an insurance policy, not a contract for professional services," and the duty allegedly breached was "[a]t most . . . incidental to the policy" (citations and punctuation omitted; emphasis in original)).

14

contract for legal services is unenforceable, or the alleged breach is only "remotely" related to the legal services that were the subject of a written agreement, any breach-of-contract claim is necessarily premised on an oral contract, and OCGA § 9-3-25's four-year statute of limitation applies to that claim. Id. (citation and punctuation omitted).[6]

(b) Our order granting certiorari in this case highlighted a possible tension in our precedent. Specifically, we cited *Newell Recycling*, which, as discussed above, indicated that a claim for a breach of a contract for legal services could be governed by either OCGA § 9-3-24 or OCGA § 9-3-25, depending on the circumstances. And we cited as a point of comparison our decision in *Armstrong v. Cuffie*, 311 Ga. 791 (860 SE2d 504) (2021), where we stated in a

---

[6] CPMT suggests that, although "[a]herence to *stare decisis* is important," this "Court may want to consider" overruling *Newell Recycling* and "adopting the approach in many other states — applying the tort statute, OCGA § 9-3-33, to all legal malpractice claims" — because applying a single limitations period to all claims involving legal malpractice would make sense as a matter of public policy. But CPMT has not argued that *Newell Recycling* was wrongly decided. Accordingly, we decline CPMT's invitation to reconsider our precedent.

footnote, "It has long been the law in this state that a cause of action for legal malpractice, alleging negligence or unskillfulness . . . , is subject to the four-year statute of limitation in OCGA § 9-3-25." *Armstrong*, 311 Ga. at 793 (1) n.4 (citation and punctuation omitted; ellipses in original). Taken in isolation, that language might suggest that all breach-of-contract-for-legal-services claims are governed by OCGA § 9-3-25, contrary to our application of *Newell Recycling* discussed above.

When read in context, however, there is no necessary tension between *Newell Recycling* and *Armstrong* as to which statute of limitation governs claims for breach of a contract for legal services. *Armstrong* addressed only "whether the Court of Appeals properly identified the accrual date" of a breach-of-contract-for-legal-services claim alleging legal malpractice in connection with the contract, not which statute of limitation applied to the claim. *Armstrong*, 311 Ga. at 791, 793-794 (1) & n.4 (noting that the Court of Appeals had determined that the "malpractice suit was a contract action"). And although the plaintiff in *Armstrong* had "signed a written contract

16

for representation" with the defendant attorney "to handle [the plaintiff's] claims against *the other drivers*" involved in a motor-vehicle accident, it does not appear that the duty the plaintiff alleged the defendant attorney had breached — the duty to "seek [uninsured motorist] coverage" by timely filing a claim against *the plaintiff's insurance company* — arose directly from that written contract.[7] Id. at 792-793 (1) (citation and punctuation omitted; emphasis supplied). Because it was undisputed in *Armstrong* that OCGA § 9-3-25's four-year limitation period for oral contracts applied to the claim, and the opinion does not suggest that the breach-of-contract claim was premised on the written agreement, *Armstrong* is most sensibly read as addressing a claim for breach of an oral contract. And in that context, *Armstrong*'s dicta stating that OCGA § 9-3-25's

---

[7] In *Armstrong*, we noted the parties' agreement that the defendant attorney, having been engaged to represent the plaintiff "in connection with the motor vehicle accident," had a general legal duty "to take actions to protect [the plaintiff's] interests, including preserving a claim for insurance coverage," and a specific duty to timely present an uninsured-motorist claim to the plaintiff's insurance company. *Armstrong*, 311 Ga. at 795 (2). But the opinion does not indicate that the parties believed the written representation agreement was the source of those duties.

17

four-year statute of limitation governed the breach-of-contract-for-legal-services claim is consistent with *Newell Recycling* and with the line of Court of Appeals' precedent on which *Armstrong* relied, which addressed breach-of-contract claims premised on oral agreements.[8] Accordingly, we do not read *Armstrong* as suggesting that all breach-of-contract-for-legal-services claims are governed by OCGA § 9-3-25, and we disapprove of such a broad interpretation of the case.

---

[8] See *Armstrong*, 311 Ga. at 794 (1) n.4 ("It has long been the law in this state that a cause of action for legal malpractice, alleging negligence or unskillfulness . . . , is subject to the four-year statute of limitation in OCGA § 9-3-25." (ellipses in original) (quoting *Royal v. Harrington*, 194 Ga. App. 457, 457 (390 SE2d 668) (1990))); *Royal*, 194 Ga. App. at 457 ("It has long been the law in this state that a cause of action for legal malpractice, alleging negligence or unskillfulness, sounds in contract (agency) and, in the case of an oral agreement, is subject to the four-year statute of limitation in OCGA § 9-3-25." (emphasis omitted) (quoting *Ballard v. Frey*, 179 Ga. App. 455, 459 (3) (346 SE2d 893) (1986))); *Ballard*, 179 Ga. App. at 459 (3) ("It has long been the law in this state that a cause of action for legal malpractice, alleging negligence or unskillfulness, sounds in contract (agency) and, in the case of an oral agreement, is subject to the four-year statute of limitation in OCGA § 9-3-25 . . . ." (punctuation in original; emphasis omitted) (quoting *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 167 Ga. App. 411, 412-413 (1) (306 SE2d 340) (1983))); *Hamilton*, 167 Ga. App. at 412-413 (1) ("It has long been the law in this state that a cause of action for legal malpractice, alleging negligence or unskillfulness, sounds in contract (agency) and, in the case of an oral agreement, is subject to the four-year statute of limitation in OCGA § 9-3-25 (formerly Code Ann. § 3-706).").

We note that, in *Coe v. Proskauer Rose, LLP*, 314 Ga. 519 (878 SE2d 235) (2022), we parenthetically quoted the language from *Armstrong* discussed above to support a statement that "the statute of limitation for legal malpractice claims is set out in OCGA § 9-3-25." *Coe*, 314 Ga. at 524-525 (2) (citing *Armstrong*, 311 Ga. at 793 (1) n.4).[9] But as with *Armstrong* itself, we do not read *Coe* as contradicting our conclusion that, under *Newell Recycling*, a claim for breach of contract for legal services can be governed by either OCGA § 9-3-24 or OCGA § 9-3-25, depending on the circumstances. *Coe* referenced the statute of limitation applicable to the plaintiffs' legal-malpractice claim only by way of background to explain the Court of Appeals' belief that a four-year limitation period applied to both the legal-malpractice claim and the claims for fraud and

---

[9] In the instant case, the Court of Appeals relied on *Coe*'s parenthetical quotation of *Armstrong* in determining which statute of limitation applied to Plaintiffs' tort-based legal-malpractice claims. See *Titshaw*, 368 Ga. App. at 268 (1). As noted above, however, Division 1 of the Court of Appeals' opinion falls outside the scope of our certiorari questions, and we take no position on whether the court correctly determined that Plaintiffs' tort-based legal-malpractice claims were governed by OCGA § 9-3-25's four-year statute of limitation.

19

negligent misrepresentation, before we turned to the issue at hand — whether the Court of Appeals had erred in failing to separately analyze the accrual date for the fraud and negligent misrepresentation claims. See id. at 524-525 (2). And although a written contract for legal services existed in *Coe*, whether OCGA § 9-3-25's four-year statute of limitation applied to the legal-malpractice claim was not an issue that the parties disputed below or that fell within the scope of the questions we posed in granting certiorari. See id. at 521, 524 (1) (explaining that the plaintiffs had argued in the Court of Appeals about when the claims accrued and whether the statutes of limitation were tolled, not about which statute of limitation applied to the claims, and that we had granted certiorari to consider whether the claims of fraud and negligent representation were barred by the statute of limitation). Indeed, we expressly stated in *Coe* that, because our order granting certiorari focused on the plaintiffs' claims for fraud and negligent misrepresentation, we were not deciding statute-of-limitation issues regarding the plaintiffs' legal-malpractice claim. See id. at 524-525 (1) & (2) n.14

20

(clarifying that the Court of Appeals' application of the statute of limitation to the plaintiffs' legal-malpractice claim "d[id] not fall within the scope of the questions that we posed on granting the Coes' petition for certiorari"). Accordingly, *Coe*'s reliance on *Armstrong* for the proposition that "the statute of limitation for legal malpractice claims is set out in OCGA § 9-3-25" is dicta. Id. at 524-525 (2). We do not read *Coe* as broadly suggesting that all claims for breach of contract for legal services are governed by OCGA § 9-3-25, and we disapprove such an interpretation of the case.

(c) In Division 4 of its opinion, the Court of Appeals concluded that Plaintiffs' claim alleging that CPMT breached a contract for legal services was due to be dismissed because it was based on the same underlying conduct as, and therefore "duplicative" of, Plaintiffs' tort-based legal-malpractice claim against CPMT. See *Titshaw*, 368 Ga. App. at 269-270 (2), (4). And, as noted above, the Court of Appeals had previously concluded in Division 1 of its opinion that Plaintiffs' tort-based legal-malpractice claim against CPMT was barred by OCGA § 9-3-25's four-year

statute of limitation. See id. at 268-269 (1).

Why the Court of Appeals believed the allegedly "duplicative" nature of the breach-of-contract claim warranted dismissal is unclear. When read in context, the court's opinion is susceptible of two interpretations. But as explained below, regardless of which interpretation is correct, the Court of Appeals' reasoning was flawed.

First, Division 4 of the Court of Appeals' opinion reasonably may be interpreted as concluding that Georgia law prohibits plaintiffs from simultaneously pursuing different causes of action based on the same underlying conduct. This is because, in concluding that the breach-of-contract claim was duplicative of the tort-based legal-malpractice claim, the Court of Appeals cited *Smiley v. Blasingame, Burch, Garrard & Ashley, P.C.*, 352 Ga. App. 769, 776 (2) (835 SE2d 803) (2019), and *Oehlerich v. Llewellyn*, 285 Ga. App. 738, 741 (2) (647 SE2d 399) (2007). See *Titshaw*, 368 Ga. App. at 270 (4). And *Smiley* and *Oehlerich* belong to a line of Court of Appeals cases holding that Georgia law prohibits a plaintiff from

maintaining separate causes of action where each cause of action is based on the same conduct, the same damages, and a breach of a duty arising from the same source.[10]

---

[10] See *Smiley*, 352 Ga. App. at 776 (2) (835 SE2d 803) (2019) ("Where, as here, the breach of fiduciary duty claim arises from the same source as the legal malpractice and misrepresentation claim (the attorney-client relationship), was allegedly breached by the same conduct (the failure to disclose the additional settlement funds), and the damages flowing from each claim are no different from the alleged legal malpractice, Georgia law provides that the claims for breach of fiduciary duty and misrepresentation cannot be asserted separately."); *Stewart v. McDonald*, 347 Ga. App. 40, 50 (3) (815 SE2d 665) (2018) (holding that "[the plaintiff's] claims for damages for fraud and breach of fiduciary duty are factually based upon [the defendant's] breach of his fiduciary duties to [the plaintiff] in the performance of his duties as a lawyer, so the claims are duplicative of [the plaintiff's] legal malpractice claim"), disapproved of by *Coe*, 314 Ga. 519; *Anderson v. Jones*, 323 Ga. App. 311, 318 (2) (745 SE2d 787) (2013) (affirming a grant of summary judgment against the plaintiff on a breach-of-fiduciary duty claim where "the claim duplicated her legal malpractice claim" in that "the duties arose from the same source (that is, the attorney-client relationship), were allegedly breached by the same conduct, and allegedly caused the same damages"), disapproved of by *Coe*, 314 Ga. 519; *Oehlerich*, 285 Ga. App. at 740-741 (2) (holding that the plaintiff could not maintain separate causes of action for "breach of fiduciary duty, breach of contract, and breach of the implied duty of good faith and fair dealing" because they were all "based on the establishment of a fiduciary attorney-client relationship that he claim[ed] was breached" in a legal-malpractice claim and therefore were "simply duplications of this legal malpractice claim"); *Griffin v. Fowler*, 260 Ga. App. 443, 449 (2) (579 SE2d 848) (2003) (noting that the plaintiff could not have a "separate cause of action for fraud apart from [a] malpractice claim" where "the damages flowing" from those claims were "no different"), disapproved of by *Coe*, 314 Ga. 519; *McMann v. Mockler*, 233 Ga. App. 279, 282 (3) (503 SE2d 894) (1998) (holding that the plaintiff could not maintain separate "claims for breach of contract, breach of implied duty of good faith and fair dealing, and breach of fiduciary duty [that] were merely duplications of her malpractice complaint"). These cases are disapproved as stated below.

To the extent that the Court of Appeals concluded that Plaintiffs were not permitted to maintain separate claims for legal malpractice and breach of contract based on the same conduct, it erred. Under Georgia law, plaintiffs are permitted to pursue alternative theories of relief based on causes of action with different elements, even when those causes of action arise from the same underlying conduct. See *Coe*, 314 Ga. at 528-529 (2) (rejecting an argument that the plaintiffs could not simultaneously pursue a legal-malpractice claim and other claims with different elements that were based on "the same conduct," "the same damages," and "duties ar[ising] from the same source (that is, the attorney-client relationship)" (citation and punctuation omitted)).[11] And we have

_____

[11] See also *Traub v. Washington*, 264 Ga. App. 541, 544 (2) (591 SE2d 382) (2003) (rejecting an argument that the plaintiff could not pursue "duplicative" claims for both breach of fiduciary duty and legal malpractice because a plaintiff has "the right to plead alternative theories"); OCGA § 9-11-8 (e) (2) ("A party may set forth two or more statements of a claim or defense alternatively or hypothetically, . . . [and] may also state as many separate claims or defenses as he has . . . ."); OCGA § 9-11-15 (c) (presuming that more than one claim can "arise[ ] out of the [same] conduct" in providing that new claims asserted in an amended pleading that are based on the same conduct at issue in the original pleading relate back to the date of the original pleading). Cf. *Atlanta Women's Specialists, LLC v. Trabue*, 310 Ga. 331, 337 (2) (850 SE2d

24

already disapproved cases from the *Oehlerich*/*Smiley* line of precedent to the extent that they suggest "claims are always duplicative of legal malpractice claims if based on the same facts." Id. at 529 (2). Today, we reiterate that such cases are disapproved. And we further clarify that plaintiffs are not prohibited from simultaneously pursuing different causes of action with different elements simply because the claims involve the same underlying conduct, the same damages, and duties deriving from the same source.

Second, Division 4 of the Court of Appeals' decision reasonably may be interpreted as concluding that a statute of limitations that bars one cause of action necessarily bars other causes of action based on the same conduct, even when those other causes of action have different elements. Under this reading of the Court of Appeals' opinion, it concluded in Division 4 that the breach-of-contract claim was barred by OCGA § 9-3-25 because the claim was "duplicative"

748) (2020) (noting that a "plaintiff may plead alternative and inconsistent theories in his complaint" (citation and punctuation omitted)).

of the legal-malpractice claim that it had concluded in Division 1 was barred by that statute of limitation. *Titshaw*, 368 Ga. App. at 268-270 (1), (4). But to the extent that this was the Court of Appeals' reasoning, it too was erroneous.

As we have previously explained, claims "based on the same facts" underlying a legal-malpractice claim will not necessarily "fail on statute of limitation grounds in the same way as the legal malpractice claim." *Coe*, 314 Ga. at 529 (2). Rather, which statute of limitation applies to a claim turns on the nature of the cause of action at issue. See OCGA § 9-3-20 et seq. (specifying the limitations periods for different types of causes of action). See also *Newell Recycling*, 288 Ga. at 238 (explaining how to "determin[e] which statute of limitation applies" to a breach-of-contract claim based on the nature of the claim). And even when the same limitation period applies to more than one claim and the claims "ar[i]se from the same series of transactions," each claim must be "analyzed separately to determine when the right of action accrued for that particular claim." *Coe*, 314 Ga. at 525 (2). See *Daniel v. Georgia R.R. Bank &*

*Tr. Co.*, 255 Ga. 29, 30 (334 SE2d 659) (1985) ("Various causes of action in tort arising from the same set of facts may commence running at different times depending on the nature of the several causes of action involved, and the fact that the statute has run as to one does not necessarily mean that the statute has run as to all.").

For these reasons, the Court of Appeals erred in concluding that, because the breach-of-contract-for-legal-services claim against CPMT was based on the same underlying conduct as the legal-malpractice claim against CPMT, the trial court should have dismissed the breach-of-contract claim.

(d) To determine whether the trial court properly denied CPMT's motion to dismiss the breach-of-contract-for-legal-services claim as barred by the statute of limitation, the Court of Appeals should have instead considered the two legal questions set out below under the well-established motion-to-dismiss standard, which provides that a court may grant a motion to dismiss only if,

> tak[ing] the allegations in the complaint as true and resolv[ing] all doubts in favor of the plaintiff[,] . . . (1) the allegations of the complaint disclose with certainty

27

that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Wise Bus. Forms, Inc. v. Forsyth County*, 317 Ga. 636, 644 (2) (893 SE2d 32) (2023) (citations and punctuation omitted).

When determining whether to grant a motion to dismiss a breach-of-contract claim as barred by the statute of limitation, the threshold question is which statute of limitation applies to the claim. As explained in Division 3 (a) above, OCGA § 9-3-24's six-year limitation period governs a breach-of-contract-for-professional-services claim premised on a breach of a duty arising directly from a written contract with the defendant — including a breach of a duty that is implied from the contract as a matter of law. By contrast, OCGA § 9-3-25's four-year limitation period governs a breach-of-contract-for-professional-services claim premised on a breach of an oral agreement or a breach of a duty that does not arise directly from a written contract with the defendant. Thus, to determine which

28

statute of limitation applies to a plaintiff's breach-of-contract-for-professional-services claim at the motion-to-dismiss stage, a court must ask whether the allegations in the complaint disclose with certainty that the breach alleged by the plaintiff could not be a breach of any duty directly arising from a written contract with the defendant. And only if the plaintiff's allegations show that the plaintiff could not establish that the breach of contract that the plaintiff alleges is a breach of a duty arising directly from a written contract with the defendant should the court apply OCGA § 9-3-25, rather than OCGA § 9-3-24, to the claim.

After determining which statute of limitation applies to a plaintiff's breach-of-contract claim, a court ruling on a motion to dismiss the claim as barred by the statute of limitation must consider whether it is possible, within the framework of the complaint, for the plaintiff to prove that the breach-of-contract claim was filed within the applicable limitation period. Only if it is certain that the plaintiff cannot make such a showing should the court grant the motion to dismiss the breach-of-contract claim as barred by the

statute of limitation. See *Wise Bus. Forms*, 317 Ga. at 644 (2).

Because the Court of Appeals did not apply these legal principles in reversing the trial court's denial of CPMT's motion to dismiss Appellant's breach-of-contract-for-legal-services claim, we vacate Division 4 of the Court of Appeals' opinion. And as explained above, because a conflict in precedent would arise if we vacated Division 4 but not Division 2 of the Court of Appeals' opinion, we exercise our discretion to vacate Division 2 as well. The cases are remanded for further proceedings consistent with this opinion.

*Judgments vacated and cases remanded. All the Justices concur.*

PINSON, Justice, concurring.

When this Court reviews decisions of the Court of Appeals on certiorari, we often review only a part of the decision below. See, e.g., *Melancon v. State*, S23G1128, 2024 WL 4204624 (Ga. Sept. 17, 2024) (reviewing conclusion that evidence was sufficient to support conviction, but not conclusion that trial counsel did not render ineffective assistance). In those cases, if we conclude that the Court of Appeals erred with respect to the portion of the decision under review, we typically write an opinion explaining why we think that, and then issue a judgment that vacates or reverses the Court of Appeals' judgment and remands for further proceedings as needed. See id. at *1. In rare cases, however, we have also said in our opinions that we are vacating or reversing not only the judgment, but also specific *divisions* of the Court of Appeals' opinion below. Although I have before joined and even authored opinions that include that additional language, I have come to believe that such language does not accurately reflect the effect of our decisions. I write separately to explain what I think that language actually

31

means, and to suggest that we use more precise language going forward.

1. That explanation mostly has to do with the different functions of judgments and opinions, so let's start there.

Speaking generally, a judgment is the mechanism through which a court resolves legal disputes. Parties come before a court to settle a controversy about their relative rights and obligations under the law, and the court exercises the judicial power to settle those rights and obligations in a binding way. See *Sons of Confederate Veterans v. Henry County Bd. of Commissioners*, 315 Ga. 39, 47-48 (2) (a) (880 SE2d 168) (2022). That power is formally exercised — and thus the parties' rights and obligations are formally settled — through the entry of a judgment. See *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (115 SCt 1447, 131 LEd2d 328) (1995) (explaining that "a judgment conclusively resolves the case" because "a 'judicial Power' is one to render dispositive judgments" (quoting Frank H. Easterbrook, *Presidential Review*, 40 Case W. Res. L. Rev. 905, 926 (1990)). See also, e.g., JUDGMENT, Black's Law Dictionary

32

(12th ed. 2024) (defining a judgment as the "final determination of the rights and obligations of the parties in a case"); 1 Henry Campbell Black, *A Treatise on the Law of Judgments* § 1, at 2 (1st ed. 1891) ("We may therefore define a judgment as the determination or sentence of the law, pronounced by a competent judge or court, as the result of an action or proceeding instituted in such court, affirming that, upon the matters submitted for its decision, a legal duty or liability does or does not exist."). Put simply, when a court enters a judgment granting or denying the relief sought, it "settle[s] authoritatively what is to be done" about the controversy at issue. Edward A. Hartnett, *A Matter of Judgment, Not a Matter of Opinion*, 74 NYU L. Rev. 123, 127 (1999) (alteration in original) (quoting Larry Alexander & Frederick Schauer, *On Extrajudicial Constitutional Interpretation*, 110 Harv. L. Rev. 1359, 1377 (1997)). See also 3 William Blackstone, Commentaries *396 ("The judgment, in short, is the remedy prescribed by law for the redress of injuries; and the suit or action is the vehicle or means of administering it.").

Unlike judgments, opinions do not resolve the controversy before the court. Instead, an opinion expresses a court's *reasons* for its judgment. See, e.g., Harnett, 74 NYU L. Rev. at 126 ("The operative legal act performed by a court is the entry of a judgment; an opinion is simply an explanation of reasons for that judgment."); Charles A. Sullivan, *On Vacation*, 43 Hous. L. Rev. 1143, 1155 (2006) ("[T]he judgment is the action the court takes to resolve the case before it; the opinion explains and justifies the court's action."); Gary Lawson & Christopher D. Moore, *The Executive Power of Constitutional Interpretation*, 81 Iowa L. Rev. 1267, 1328 (1996) ("Judgments are often accompanied by opinions, which express the reasons that lie behind the judgment."). To use Judge Easterbrook's words, a judgment supplies "the binding force of a decision," while the opinion supplies "the rule of decision that produced it." Easterbrook, 40 Case W. Res. L. Rev. at 926. That function is by no means unimportant: For the case before the court, disclosing the reasons for the court's decision gives guidance to the lower courts and parties as they move forward with the litigation. And beyond

the case itself, the reasons set out in an appellate opinion that are necessary to the court's judgment become holdings that are binding precedent within the judicial system. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *In the Interest of R.J.A.*, 316 Ga. 822, 824 (890 SE2d 698) (2023) (Pinson, J., concurring in the denial of certiorari) ("[T]he universe of things that are potentially necessary to an appellate court's decision—and thus make up its holding—is contained within that court's opinion."). But when it comes to resolving the controversy before the court, it is the appellate court's judgment, not its opinion, that gets the job done.

2. Given the respective functions of judgments and opinions, what is this Court doing, and not doing, when it reviews a decision of the Court of Appeals on certiorari?

First, judgments. Because the entry of a judgment is "[t]he operative legal act performed by a court," appellate courts act through judgments, too. Hartnett, 74 NYU L. Rev. at 126. So when this Court reviews the decision of a lower court, including the Court

of Appeals, we are ultimately reviewing and acting on the court's judgment, not its opinion. See Sullivan, 43 Hous. L. Rev. at 1155 ("Although our citation system seems to suggest that what is being affirmed, reversed, or vacated is the opinion of the court being cited, what is formally at stake is the lower court's judgment, not its opinion."). Indeed, we know this to be true because "when an appellate court disagrees with a lower court's opinion, but agrees with its judgment, it *affirms* rather than reverses." Hartnett, 74 NYU L. Rev. at 126. And if that's not enough evidence, just look to the decretal language at the end of this Court's opinions, which, with the exception of dismissing an appeal for lack of jurisdiction, always states what action this Court takes with respect to the lower court's *judgment* — either affirming, modifying, vacating, or reversing the judgment, in whole or in part. See, e.g., *infra.* See also Sullivan, 43 Hous. L. Rev. at 1156. ("With respect to this core function of dealing with judgments, . . . . the reviewing court has only five options: dismiss the appeal, which effectively affirms the judgment below; explicitly affirm that judgment; modify the judgment; reverse that

judgment; or vacate it."). By issuing a judgment affirming or rejecting the lower court's judgment, an appellate court settles authoritatively whether the lower court correctly determined the rights and obligations of the parties before it, and if not, sets the lower court on the right track to doing so.

The effect of a decision of this Court on a lower court's judgment is fairly straightforward. If we affirm the judgment, that judgment's resolution of the controversy at issue — say a grant of summary judgment — remains in force. On the other hand, if we vacate or reverse a judgment, that judgment is set aside, and so on remand, the lower court must enter a new judgment consistent with whatever guidance we have given in our opinion.[12]

---

[12] A judgment is vacated and thus set aside whether it is "vacated" or "reversed." A reversal of a judgment is simply a subset of a vacatur that indicates to the lower courts that the higher court has determined that the *opposite* judgment must be entered instead. Compare, e.g., *First Acceptance Ins. Co. of Ga. v. Hughes*, 305 Ga. 489 (826 SE2d 71) (2019), *on remand at* 353 Ga. App. 320, 320 (836 SE2d 634) (2019) (reversing the judgment of the Court of Appeals, which on remand said that, following reversal, "our decision . . . is vacated" and then adopted "the judgment of the Supreme Court [as] the judgment of this court"), with *WS CE Resort Owner, LLC v. Holland*, 315 Ga. 691 (884 SE2d 282) (2023), *on remand at* 368 Ga. App. 873 (891 SE2d 873) (2023) (vacating the judgment of the Court of Appeals, which then remanded

The effect of a decision of this Court on a lower court's *opinion*, however, is different. Because appellate courts review and act on a lower court's judgment, not its opinion, our decision — whether it affirms, vacates, or reverses the judgment below — does not act directly on the lower court's opinion itself, at least not formally. Just as an affirmance of a judgment does not necessarily stamp a lower court's opinion with full approval, see, e.g., *WMW, Inc. v. Am. Honda Motor Co.*, 291 Ga. 683, 683 (733 SE2d 269) (2012) ("[W]hile we disagree with the rationale of the majority opinion below, it reached the right result, and we therefore affirm the Court of Appeals'

---

to the trial court to apply in the first instance the test articulated by the Supreme Court). See also Hon. Jon O. Newman, *Decretal Language: Last Words of an Appellate Opinion*, 70 Brook. L. Rev. 727, 728 (2005) (explaining basic difference between reversal and vacatur, but noting disagreement about where to draw the line between one and the other).

In cases where an appellate court reviews multiple parts of a lower court's decision, the court might also issue a judgment that affirms the judgment in part and vacates or reverses the judgment in part. For example, in *Martin v. Six Flags Over Georgia II, L.P.*, 301 Ga. 323 (801 SE2d 24) (2017), the Court of Appeals concluded that a jury was authorized to find the defendant liable for premises liability but that erroneous pretrial rulings on apportionment required a full retrial. On certiorari review, we agreed with the Court of Appeals' conclusion on liability, but we concluded that the apportionment error required a retrial only as to apportionment, so we affirmed the judgment in part and reversed it in part. See id. at 341 (III).

judgment."), vacatur or reversal of a judgment does not mean that the accompanying opinion itself is set aside. (For evidence of that conclusion, consult our reporters, where Court of Appeals opinions that have been vacated or reversed by this Court remain published and searchable in electronic databases.) Instead, when this Court vacates or reverses a judgment of the Court of Appeals, its effect is to strip the opinion accompanying that judgment of binding precedential effect. See *County of Los Angeles v. Davis*, 440 U.S. 625, 634 n.6 (99 SCt 1379, 59 LEd2d 642) (1979) ("Of necessity our decision 'vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect.'"). This makes sense: if reasoning in an opinion becomes binding precedent because it is necessary to a judgment, that reasoning ceases to be binding when the underlying judgment no longer exists.[13]

---

[13] In referring to the precedential effect of the opinion, I mean to address only whether the holdings of the opinion are binding precedent for future cases, not any effect on law of the case, which binds the parties in the current case. If this Court vacates or reverses a judgment below, but our decision leaves a portion of the Court of Appeals' decision undisturbed, the courts below would not be free to reconsider that portion of the decision. Instead, on remand, the

This understanding of the effect of our decisions also makes sense in light of our constitutional role. That role, just like every court in our constitutional system, is limited to resolving the controversy between the parties who come before us. *Sons of Confederate Veterans*, 315 Ga. at 50 (2) (a) ("We recognized early in our Court's history that th[e judicial] power is limited to deciding genuine 'controversies.'"). We do that job on appeal by reviewing and, if needed, correcting judgments, not by grading, or modifying, or erasing opinions. Of course, in reviewing a judgment, we may express disagreement with the opinion below, or even precedents from other cases, but even then, we do so only as needed to reach and explain our decision. Indeed, even when a lower court's opinion is stripped of its precedential effect, that consequence is generally a side effect of the core exercise of judicial power in the case, which is expressed through the vacatur of the judgment below.

Court of Appeals would issue a new decision consistent with ours, and the undisturbed portion of the Court of Appeals' original decision would be law of the case. See, e.g., *Sec. Life Ins. Co. of Am. v. Clark*, 273 Ga. 44, 46-47 (1) (535 SE2d 234) (2000).

In short, when this Court reviews a decision of the Court of Appeals on certiorari, we formally review and act upon the judgment below, not the opinion. If we agree that the judgment that the Court of Appeals ultimately reached is correct, we affirm the judgment. If we disagree with the judgment, we vacate or reverse it, in whole or in part, and we remand the case to the Court of Appeals for further proceedings. And when a judgment of the Court of Appeals is vacated or reversed, the opinion below is deprived of its precedential effect, but it is not erased or set aside.

3. This brings me to the language we use to describe the effect of our decisions reviewing decisions of the Court of Appeals. In the lion's share of such decisions, we include decretal language at the end of the opinion that properly reflects the effect of the decision on the judgment below — affirming, modifying, vacating, or reversing that judgment, in whole or in part — and gives further direction for remand as needed. But sometimes, we will include somewhere in our opinion a separate statement purporting to "vacate" or "reverse" a specific "division" of the Court of Appeals' opinion. I'll offer some

thoughts on how best to understand this language and what, if anything, it might be doing.

To begin with, I hope the discussion above makes clear enough what I think this "vacating divisions" language does *not* mean. Because judgments are the operative legal act through which we exercise core judicial power, our decisions formally address the judgments of lower courts, not any opinions that may accompany their judgments. And although vacating or reversing a judgment below deprives an accompanying opinion of precedential effect, it does not somehow erase or set aside that opinion. So I don't think this additional language can be taken literally to mean that this Court is formally modifying, revising, erasing, or setting aside specific divisions of the Court of Appeals' opinion, or even ordering as much.

So what might this language mean instead? It may be that this language has been used on occasion not to describe the formal effect of our decision on the Court of Appeals' decision, but instead as a shorthand for what portions of the Court of Appeals' decision we

have addressed — the idea being to guide the Court of Appeals on remand. If that is the aim, we should take care in when and how we give such guidance.

For starters, we should be mindful that we have already given the Court of Appeals guidance on how to address the effect of our decisions on remand. In *Shadix v. Carroll County*, 274 Ga. 560, 563 (1) (554 SE2d 465) (2001), we said that "the Court of Appeals, when considering the effect of a reversal from this Court, should not look for nomenclature in our opinion to define the scope of our ruling," because "[n]o such 'magic words' are required to circumscribe our reversals." We further explained that when this Court reverses a decision of the Court of Appeals "without considering or addressing a division of that opinion" — a common occurrence on certiorari review — "we do not determine our reversal's impact upon that particular division," but instead "leave it to the Court of Appeals to determine what impact, if any, our reversal has upon that particular division." Id. And we concluded with express directions for addressing the reversal of a decision on remand: (1) "read this

43

Court's opinion within the context of the opinion being reversed"; (2) "determine whether any portions of the opinion being reversed were neither addressed nor considered by the Supreme Court"; and (3) "enter an appropriate disposition with regard to those portions that is consistent with the issues addressed and considered by this Court." Id. at 563-564. In other words, we have told the Court of Appeals not to look for "magic words" that say what parts of their opinion are implicated; that this Court does not determine the impact of our decisions on the opinions below (as distinct from the judgments); and that we leave it to the Court of Appeals to do that on remand and, in light of that determination, enter an appropriate disposition. In my view, that guidance is clear and sensible, and it generally puts responsibility for addressing the effect of our decision in the right hands: in keeping with this Court's role as the reviewing court, we review the decision before us and explain whether and how the Court of Appeals erred, but it is left to the Court of Appeals on remand to determine what is left in the case at that stage for the court to consider (or reconsider) and decide.

That said, I do not understand *Shadix* to preclude this Court from offering limited and specific guidance as to which portion of the Court of Appeals' reasoning is the focus of our decision. We might do that, for example, in a case like this one, where we have jurisdiction to review only one of multiple judgments, and so we need to be clear which decision and reasoning is the subject of our review. But in such cases, we should be careful to give that guidance using language that is both precise and consistent with our past guidance for applying our decisions on remand. Rather than simply purporting to "vacate" or "reverse" certain divisions of the opinion below, we might say instead that the judgment below is vacated because the reasoning in those specific divisions was in error, and we leave it to the Court of Appeals on remand to determine whether any of its other holdings must be reconsidered in light of our opinion.

One other possible meaning might be ascribed to this "vacating divisions" language. When the basis for vacating or reversing a judgment of the Court of Appeals is a disagreement with or disapproval of reasoning of the Court of Appeals that is contained in

45

a specific division of its opinion, this Court might say that it is "vacating" or "reversing" that division to make clear that the reasoning in that division is no longer binding precedent. I do not think that language is stripping the division in such a case of precedential effect as a formal matter because, as I mentioned above, the accompanying opinion is *already* deprived of its precedential effect through vacatur of the judgment.[14] But because that precedent-destroying effect of vacatur is implicit, including such language might be used to signal to readers more clearly just which reasoning is infirm and should not be relied on. If that is the

---

[14] Although it is thus not necessary to add this language to deprive an opinion of further precedential effect in cases where this Court is already vacating the judgment below, language similar in kind might well be used to strip a division or opinion of precedential value in a case where we ultimately *affirm* the judgment. See, e.g., *Fulton County v. Ward-Poag*, 310 Ga. 289 (849 SE2d 465) (2020) (disapproving of Court of Appeals' reasoning creating a bright-line rule that a party takes consistent positions, and thus lacks intent to deceive the court system, when the party amends a bankruptcy schedule to include a previously undisclosed asset, but nevertheless affirming the Court of Appeals' judgment and its ultimate conclusion that summary judgment was unwarranted in the case because genuine issues of fact remained). In such a case, without language that clearly indicates our disagreement with particular reasoning of the Court of Appeals that is within the scope of our review on certiorari, courts might inadvertently rely on that disapproved reasoning in a future case.

purpose for including such language, however, we might again choose language that does not give the misimpression that our decision is taking some formal action with respect to the opinion itself beyond the automatic stripping of its precedential effect that vacatur already takes care of.

4. That leaves this case. For the reasons above, it would be better not to say in our opinion here that we are "vacating" certain divisions of the Court of Appeals' opinion below, because we are not. Instead, we should say that we disagree with (or disapprove of) the reasoning in Division 4 of its opinion because, in reversing the trial court's denial of CPMT's motion to dismiss Titshaw's breach-of-contract-for-legal-services claim, the court did not apply the correct legal principles, which we set out in our opinion. The only thing related to Division 4 that we are *vacating* is the judgment in Case No. A23A0439, which that Division addresses. And because the same reasoning the Court of Appeals applied in Division 4 appears in Division 2 of Case No. A23A0410, we are vacating the Court of Appeals' judgment in that case as well. (We are exercising our

discretion to vacate that judgment even though the claim against Geer addressed in Division 2 has been mooted by a settlement between Titshaw and Geer, because leaving that judgment in place would leave the Court of Appeals' opinion as binding precedent in conflict with our decision in this case. See *WMW, Inc. v. Am. Honda Motor Co.*, 291 Ga. 683, 685 (2) n.1 (733 SE2d 269) (2012) (noting that settlement can moot an appeal but exercising discretion to vacate the decision below to avoid "a judgment, unreviewable because of mootness, from spawning any legal consequences" (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (71 SCt 104, 95 LE 36) (1950)). I still join the Court's opinion because I understand that language to mean what I have just said here. But in the future, I hope we will avoid such imprecise language and just say what we mean.

\*

If you've made it to the end of this separate writing, you might be left with the impression that I'm just quibbling over word choice. Maybe so. But words uttered by courts have power. Our Constitution

48

vests courts with the power to settle definitively the rights and obligations of the parties who appear before us. And although the words we use in our opinions don't do that settling as a formal matter, they justify how those rights and obligations are settled, and they give rise to precedent that is binding throughout our State's judicial system. These functions are central to the rule of law and thus solemn responsibilities of every appellate court. Given the stakes, the more care we take with our words, the better, particularly when ours is the last word.